IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 23, 2002 Session

## STATE OF TENNESSEE v. WALTER MCGILL

**Direct Appeal from the Criminal Court for Knox County**
**No. 71223     Ray L. Jenkins, Judge**

———————————

**No. E2001-01074-CCA-R3-CD    Filed April 24, 2002**

———————————

The appellant, Walter McGill, pled guilty to one count of sexual battery by an authority figure and was sentenced to five years incarceration in the Tennessee Department of Correction. On appeal, the appellant contends that the trial court erred in failing to grant him full probation, or, in the alternative, split confinement. Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Donald A. Bosch, Lisa B. Morton, and Keith D. Stewart, Knoxville, Tennessee, for the appellant, Walter McGill.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Robert L. Jolley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At the appellant's guilty plea hearing, the State recited the following stipulated facts underlying the appellant's guilty plea:

> [O]n March 17, of the year 2000 that the [appellant] was a drafting teacher at Carter High School here in Knox County, that [D.S.[1]] was a student at Carter High School at that time. That as a result of his status, that the [appellant] touched her in her vaginal area. That the

———————————

[1] This court refers to minor victims of sex crimes only by their initials.

[appellant] gave a statement to members of the Knox County Sheriff's Department admitting that he had touched [D.S.] in that area.

. . . .

[D.S.] was between the statutory ages of 13 and less than 18 at [the time of the offense].

Upon hearing the stipulated facts, the trial court accepted the appellant's plea of guilt to one count of sexual battery by an authority figure, a class C felony. See Tenn. Code Ann. § 39-13-527(a)(1) (1997). The trial court sentenced the appellant as a standard Range I offender to five years incarceration. The trial court further denied the appellant alternative sentencing and ordered the appellant to serve his sentence in confinement. The appellant now appeals the denial of alternative sentencing.

## II. Analysis

This court reviews challenges to the manner of service of a sentence de novo. However, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1997); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Regardless, we must consider the following factors in the course of our de novo review: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the appellant's potential for rehabilitation or treatment. Tenn. Code Ann. § 40-35-102 and -103 (1997), -210 (2001 Supp.); see also Ashby, 823 S.W.2d at 168. The burden is on the appellant to demonstrate the impropriety of his sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

In the trial court, because the appellant is a Range I standard offender convicted of a class C felony, he was presumed to be a favorable candidate for alternative sentencing, Tenn. Code Ann. § 40-35-102(5)-(6) (1997), and the State bore the burden of overcoming that presumption. State v. Lane, 3 S.W.3d 456, 462 (Tenn. 1999). However, the appellant bore the burden of establishing his suitability for full probation, even if he was entitled to the statutory presumption of alternative sentencing. State v. Grissom, 956 S.W.2d 514, 520 (Tenn. Crim. App. 1997). The appellant was required to establish that granting him full probation would "subserve the ends of justice and the best interest of both the public and the [appellant]." State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In denying the appellant alternative sentencing, the trial court stated:
The Court has had the benefit of the presentence investigation; the psychological report of Dr. Lyons; a letter–oh, yes, the–the victim

impact statements filed by the mother, the father, stepmother of the victim; also letters from Dr. Fain and two friends, the Hakes.
. . . .

The Court has considered the [appellant's] interest, his behavioral record, his employment history, and social history, his present condition, including physical and mental, the interest of the public, the need of deterrence of the kind of crime for which the [appellant] has committed.

The Court also is of the opinion that the [appellant] has demonstrated his lack of self-discipline. He has failed and refused to bring his conduct in line with conduct required in a civilized society.

The Court sentences the [appellant] under the provisions of [Tenn. Code Ann. §] 40-35-103, Section 1(B), that confinement is necessary to avoid depreciating the seriousness of the offense and is suited to provide an effective deterrence to others likely to commit similar offenses. All of which require the imprisonment of the [appellant] for his own best interest and especially for the protection of the public.

Initially we note that, contrary to the appellant's contention, there is an affirmative showing in the record that the trial court "consider[ed] the circumstances of the offense, the [appellant's] criminal record, the [appellant's] social history and present condition, the need for deterrence, and the best interest of the [appellant] and the public." State v. Batey, 35 S.W.3d 585, 588 (Tenn. Crim. App. 2000). The trial court specifically noted the heavy weight it placed upon the victim impact statements because the statements revealed the "complete devastation of the victim." Furthermore, the trial court considered the psychological report filed by Dr. Bernard F. Lyons, Jr., after the appellant submitted to an evaluation, and the trial court noted specific portions of the report in support of its ruling. Consideration of such a report is mandated by Tenn. Code Ann. § 39-13-705 (2001 Supp.), which statute provides:

(a) On and after January 1, 1996, each sex offender who is to be considered for probation or any other alternative sentencing shall be required to submit to an evaluation for treatment, risk potential, procedures required for monitoring of behavior to protect victims and potential victims, and an identification under the procedures developed pursuant to § 39-13-704(d)(1).

(b) Those offenders found guilty at trial or who pled guilty without an agreement as to length of sentence and/or probation and/or alternative sentencing that are to have a pre-sentence report prepared for submission to the court shall be required to submit to the evaluation referred to in subsection (a). Such evaluation shall be included as part

of the pre-sentence report and shall be considered by the court in determining the sentencing issues herein stated. If the court grants probation or alternative sentencing, any plan of treatment recommended by such evaluation shall be a condition of the probation or alternative sentencing. Those offenders, that, as part of a negotiated settlement of their case, are to be placed on probation or alternative sentencing shall be required to submit to the evaluation referred to in subsection (a) as a condition of their probation or alternative sentencing and any plan of treatment recommended by such evaluation shall be a condition of probation or alternative sentencing.

Accordingly, we will review the trial court's findings de novo with a presumption of correctness.

The appellant argues that "although the trial court cited a statute, it failed to specify whether the sentence was calculated to avoid depreciating the seriousness of the crime or to deter others. The trial court merely cited the code provision and its language." We disagree. It is true that the trial court announced that it was denying probation based upon Tenn. Code Ann. § 40-35-103 (emphasis added), which statute provides:

(1) Sentences involving confinement should be based on the following considerations:

. . . .

(B) Confinement is necessary to avoid depreciating the seriousness of the offense <u>or</u> confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses. . . .

However, our reading of the record reveals that the trial court's intent was to deny probation based upon <u>both</u> the seriousness of the offense and the deterrent value of confinement.

It is well-established that, "if probation is to be denied because of the nature of the offense, it would have to be clear that the criminal act, as committed, would be described as especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree." <u>State v. Travis</u>, 622 S.W.2d 529, 534 (Tenn. 1981); <u>see also</u> <u>State v. Fletcher</u>, 805 S.W.2d 785, 788-89 (Tenn. Crim. App. 1991). Dr. Lyons' report notes that the appellant and D.S. became familiar during interactions in and out of the classroom setting. According to Dr. Lyons, the appellant told him that D.S. sat in the front row of his class and he talked to and helped her more than other students. During the course of their conversations, the appellant learned that D.S.'s boyfriend had "dumped" her. He "concluded that [D.S.] received no love and attention from a man. He decided to 'give her self-esteem' and 'give her self-worth.'"

The appellant and D.S. began to talk more regarding D.S.'s personal feelings, and she "would give [the appellant] hugs." The appellant conceded that the relationship made him "feel good." He described himself as having a flirtatious nature but stated that, when his flirtations became unwanted, he always ceased.

The relationship evolved to a point where the conversations turned to sexual matters. The appellant revealed to Dr. Lyons that he and D.S. engaged in private conversations, using codes to describe explicit sexual acts. According to the appellant, D.S. "kissed him and they rubbed each other's buttocks." Additionally, on a March field trip, the two spent a full day together. When they returned, the appellant embraced D.S. and kissed her.

The charged offense occurred when, according to the appellant, D.S. offered to allow the appellant to look at her thong underwear. According to Dr. Lyons, the appellant "insists he only ran his finger down [the strap of the thong] two inches and only felt the material. He claims he did not touch D.S.'s vagina, though he was 'close.'" Despite the appellant's claims that he knew he had gone too far, he also acknowledged that he and D.S. continued to contact each other by e-mail throughout the summer.

Dr. Lyons notes that the appellant expresses sorrow for causing "any trauma," but the appellant claims to be ignorant of "what trauma might have occurred." Dr. Lyons further concludes that the appellant is unable to empathize with D.S., continuing to maintain that he was attempting to help her. He posits that the appellant was "grooming" the victim and concludes:

> In the short term, a modification of [the appellant's] currently depleted self-esteem and his regaining some confidence are major, if circumscribed, goals which might best be achieved by focused cognitive and interpersonal approaches in a group setting, particularly composed of other persons required to enter into such therapy. Unfortunately, this subject is unlikely to retain motivation. The precipitant for his treatment is situational rather than internal, and he is liable to be convinced that he could work things out best on his own. This can lead only to backsliding and recurrence of the behavior.

Thus, it is clear that the forty-two-year-old appellant abused a position of trust by forming an inappropriate student-teacher relationship with D.S., which relationship ultimately culminated in the instant offense. We find it particularly important to note that the appellant's behavior did not consist of a single, spontaneous bad act, but progressed over a period of time. Our courts have often noted the offensiveness of an abuse of trust in such situations. See Lane, 3 S.W.3d at 462; State v. Victor D. Neuenschwander, No. M2000-01334-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 335, at **11-12 (Nashville, May 8, 2001); State v. Mark Steven Marlowe, No. E1998-00873-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 514, at **17-18 (Knoxville, June 30, 2000), perm. to appeal denied, (Tenn. 2001).

Because of the nature of the offense, it is important to note that the abuse of the position of trust is not the sole factor supporting the denial of alternative sentencing. This court has also previously observed that

> [t]he issue in this case is the Appellant's entitlement to an alternative sentence. The potential for the rehabilitation of a defendant is one

factor which must be considered by the trial court in determining the sentencing alternative. Also to be considered is whether the offender is likely to reoffend. The risk assessment report speaks to both of these issues.

State v. Martin Charles Jones, No. E1999-01296-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 356, at *6 (Knoxville, May 7, 2001), perm. to appeal denied, (Tenn. 2001) (citations omitted). Dr. Lyons' observations concerning the appellant's lack of sympathy for the victim, his failure to perceive the harm he caused, and the risk of repetition of this behavior all militate against the appellant's rehabilitative potential. Cf. State v. Mark Logan, No. 01C01-9707-CC-00261, 1998 Tenn. Crim. App. LEXIS 967, at *9 (Nashville, September 15, 1998); State v. Roger Lee Fleenor, No. 03C01-9611-CR-00400, 1997 Tenn. Crim. App. LEXIS 1019, at *10 (Knoxville, October 9, 1997).

We also note that the trial court denied the appellant full probation because of the potential deterrent effect of the appellant's incarceration. In Hooper, 29 S.W.3d at 10-12, our supreme court outlined factors which are instructive in determining whether deterrence may support a denial of full probation:

1) Whether other incidents of the charged offense are increasingly present in the community, jurisdiction, or in the state as a whole.
. . . .
2) Whether the defendant's crime was the result of intentional, knowing, or reckless conduct or was otherwise motivated by a desire to profit or gain from the criminal behavior.
. . . .
3) Whether the defendant's crime and conviction have received substantial publicity beyond that normally expected in the typical case.
. . . .
4) Whether the defendant was a member of a criminal enterprise, or substantially encouraged or assisted others in achieving the criminal objective.
. . . .
5) Whether the defendant has previously engaged in criminal conduct of the same type as the offense in question, irrespective of whether such conduct resulted in previous arrests or convictions.
. . . .
Additional facts may be considered by the sentencing court, provided that (1) the sentencing court states these additional factors on the record with specificity, and (2) the presence of these additional factors is supported by at least some proof.

Taking the guidelines of Hooper into consideration during our review of the record, we conclude that there was proof adduced at the sentencing hearing to indicate that confining the appellant would have a deterrent effect on "others similarly situated and likely to commit similar

crimes." Id. at 10. In his brief, the appellant concedes that his conduct in the instant offense was intentional, satisfying the second factor. Id. at 11. The State also argues that the appellant's case "received substantial publicity." Specifically, the State contends that

> the reference to a newspaper article [in the victim impact statement of the victim's mother] clearly shows that this [appellant's] crime and conviction were known in the community as well as in the discrete community of the high school that the victim attended.
> . . . .
> [Appellant's] argument that the trial court's failure to make a finding on the record that his "peers knew of the allegations or would likely be aware of any sentence imposed" is disingenuous. Not only does the record show that the charges against [appellant] were published in a newspaper, but also the victim stated that she was forced to move to another high school to avoid this scandal and described the fear that continued to haunt her in the wake of the abuse.

In D.S.'s victim impact statement, she explains that "I had to go to another school and start my school life over again. I had to leave a school in which I had attended for four years." Additionally, we note that the victim impact statement of D.S.'s stepmother mentions, "[W]hen the television news carried the story and I saw that man for the first time, all I could do was weep." Moreover, Dr. Lyons, D.S.'s mother, and D.S.'s stepmother all mention reading the appellant's comments in a newspaper.

We acknowledge that, in Hooper, 29 S.W.3d at 11, our supreme court stressed "that in this age of instant access to virtually all types of information, something more than a newspaper article or television report is necessary to fulfill this factor [regarding substantial publicity]." However, "[c]riminal acts by a professional in his or her official capacity . . . need not be publicized statewide before deterrence may be considered as a factor. In most cases, substantial publicity within the defendant's professional community would probably suffice to meet this factor." Id. The record indicates that, as a result of this offense, the appellant has resigned from his position as a teacher at Carter High School and D.S. has transferred schools. The record does not specifically reflect that the reasons for the resignation and the transfer were publicized specifically within the appellant's "professional community." Nevertheless, we conclude that the trial court correctly considered deterrence in denying the appellant probation.

Although the appellant demonstrated that he has support from family and friends and he has been a productive member of society, we conclude that he has failed to meet his burden of establishing his suitability for full probation. See State v. Don Williams, No. 03C01-9303-CR-00072, 1994 Tenn. Crim. App. LEXIS 480, at *14 (Knoxville, August 3, 1994). Additionally, we find sufficient proof in the record to uphold the trial court's denial of alternative sentencing. As we observed in Fletcher, 805 S.W.2d at 789,

> [i[f appellate review reflects that the trial court, by following the statutory sentencing procedure, imposed a lawful sentence, after having given due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact upon which the sentence is based are

adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result.

### III.  Conclusion

Finding no reversible error, we affirm the judgment of the trial court.


 

 

 
                                                _____

                                                NORMA McGEE OGLE, JUDGE