IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 10, 2003

## STATE OF TENNESSEE v. JOHN LEMONT PIERCE, a.k.a. JAMES OWENS, a.k.a. JOHN LAMONTE PIERCE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-C-1336     Cheryl Blackburn, Judge**

_____

**No. M2002-02979-CCA-R3-CD - Filed June 16, 2004**

_____

The defendant, John Lemont Pierce, indicted for two counts of especially aggravated kidnapping, three counts of aggravated assault, and simple assault, entered a guilty plea to one count of aggravated assault. The trial court imposed a fifteen-year sentence to be served consecutively to a prior six-year sentence. In this appeal, the defendant contends that the trial court erred by ordering a maximum sentence of 15 years and requiring consecutive service. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which DAVID H. WELLES and DAVID G. HAYES, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, John Lemont Pierce.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Bret T. Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A transcript of the guilty plea hearing is not included in the record. The presentence report provides that on March 7, 2001, the defendant entered the residence of the victim, Verisa Gooch, and struck her in the forehead with a closed fist. He then grabbed a board, which had protruding nails, and struck her several times, causing a 1 ½ inch laceration to her head, two large bumps on her head, and two bumps on her right arm. The victim's upper right thigh was swollen. She was in severe pain and had difficulty walking. The defendant transported the victim to a house on Arthur Street and then an unknown location where an unidentified female provided the victim with medical treatment. When the defendant entered the house, the victim's grandmother, seventy-six-year-old Mary Thomas, had attempted to escape to call police. The defendant grabbed her, placed his arms around her waist, and threw her to the couch. Ms. Thomas suffered pain to the hip and buttock area.

At the sentencing hearing, Detective Chris Polk, a member of the Nashville Police Department's domestic violence division, met with the victim shortly after the assault. He photographed the victim's injuries, describing the laceration on the victim's scalp as an inch to an inch and one-half in length. The detective recalled that the initial warrants included a kidnapping charge because the victim had been removed from her residence against her will.

Cordelia Foster, who had known the defendant for approximately nine years, confirmed that he had a stable work history, sometimes holding more than one job at a time. The defendant had helped Ms. Foster with her grandchildren and provided her with financial assistance.

The defendant, who had dated the victim for approximately ten years, was the father of two of her children. A third had died of drug abuse. He described the victim as a prostitute who, despite his protests, "insisted on prostituting and doing drugs." The defendant explained that he had assaulted the victim because she "had been out with someone else." He described the offense, for which he claimed to be truly remorseful, as follows:

> [The victim] went out all night and stayed getting high, and then she come home to me . . . . [S]he lied to me about it, and I just went off. I hit her in the head with a little stick. It was a little stick about that little (indicating). It wasn't nothing to just really kill her. She didn't have to be hospitalized or anything of that nature. . . . She didn't even receive no stitches or anything . . . .

The defendant, who worked two jobs, had obtained his GED and completed one semester of college while in jail. The defendant asked for treatment for a drug addiction and also requested anger management classes. At the time of the offenses, the defendant was on probation for a 1999 aggravated assault conviction involving the victim.

The victim testified that the defendant had assaulted her throughout their entire ten-year relationship. She stated that the defendant walked into the residence as though he were heading for the restroom, "came back, picked up the telephone, jerked it out of the wall, and that's when he hit me in my face with his fist." She testified that he struck her with the stick eight or nine times.

The trial court applied the following enhancement factors: (1) that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (8) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (11) that the felony resulted in death or bodily injury and the defendant had previously been convicted of a felony that resulted in death or bodily injury; and (13) that the offense was committed while the defendant was on probation. See Tenn. Code Ann. § 40-35-114(1), (8), (11), (13) (1997).[1] No mitigating factors were found to be applicable. The trial court ordered a fifteen-year Range III sentence to be served

---

[1]These factors were renumbered by the General Assembly effective July 1, 2002. See Tenn. Code Ann. § 40-35-114 (Supp. 2002).

consecutively to the six-year sentence for which the defendant was on probation at the time of offense.

Initially, the defendant complains that the trial court erred by ordering a maximum sentence of fifteen years. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "f the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

The defendant does not challenge the enhancement factors applied by the trial court, but instead contends that the trial court erred by failing to apply mitigating factors (2) that he acted under strong provocation; (3) that substantial grounds exist tending to excuse or justify his criminal conduct, though failing to establish a defense; (11) that the offense was committed under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the conduct; and (13) he has a good work history and performed good works for others. See Tenn. Code Ann. § 40-35-113(2), (3), (11), (13). The state argues that the record supports the trial court's rejection of those factors.

In support of his claim of mitigating factors, the defendant argues that "[t]o have the mother of your child be out all night with another man, taking drugs, is strong provocation." Aside from the defendant's statements, however, there is no corroborative proof of his allegations. If, in fact, the victim had a lengthy, ongoing history of drug use and prostitution, any such behavior which preceded the assault should not have been unusual, shocking, or particularly provocative. Finally, the record demonstrates that the defendant has been physically abusive towards the victim throughout their relationship and, in fact, has a prior conviction in connection therewith. Under those circumstances, it is our view that the trial court properly declined to apply mitigating factors (2), (3), and (11).

With regard to mitigating factor (13), the catchall provision, the presentence report indicates that the defendant claimed to have worked at "B and R Development Company for five years as a house renovator." The officer that prepared the report, however, was unable to verify the claim.

While the defendant may have been a good friend to Ms. Cordelia Foster, who complimented his work record, this mitigating factor, even if applicable, would not serve to lessen the sentence in light of the several enhancement factors.

Intentional aggravated assault is defined by our code as a Class C felony. Tenn. Code Ann. § 39-13-102(d)(1). In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence should then be reduced within the range by any weight assigned to the mitigating factors present. Id.

A Range III sentence for a Class C felony offense is ten to fifteen years. Tenn. Code Ann. § 40-35-112(c). In summary, there are four applicable enhancement factors in this case: (1) that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; (8) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (11) that the felony resulted in death or bodily injury and the defendant has previously been convicted of a felony that resulted in death or bodily injury; and (13) that the offense was committed while the defendant was on probation. See Tenn. Code Ann. § 40-35-114(1), (8), (11), (13) (1997). There is arguably one mitigating factor. The trial court did not specify the weight to be accorded the various enhancement factors. In our view, however, factor (1) is entitled to great weight. The presentence report indicates that the forty-seven-year-old defendant has at least forty-seven prior convictions for offenses (including attempted armed robbery, robbery, aggravated assault, assault, attempted kidnapping, automobile larceny, petit larceny, theft, criminal impersonation, shoplifting, criminal trespass, possession of cocaine with intent to resell, possession of drug paraphernalia, disorderly conduct, evading arrest, and resisting stop and frisk). It is our view that the previous history of criminal convictions and behavior would, in and of itself, merit the maximum sentence of fifteen years.

The defendant also contends that the trial court erred by ordering that his sentence be served consecutively to his previous six-year sentence for the aggravated assault of the victim. The state disagrees.

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

[C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[2] exist:

(1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation;

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

In Gray, our supreme court ruled that before consecutive sentencing could be imposed upon the dangerous offender, considered the most subjective of the classifications and the most difficult to apply, other conditions must be present: (a) that the crimes involved aggravating circumstances; (b) that consecutive sentences are a necessary means to protect the public from the defendant; and (c) that the term reasonably relates to the severity of the offenses. In State v.

---

[2]The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

<u>Wilkerson</u>, 905 S.W.2d 933, 938 (Tenn. 1995), our high court reaffirmed those principles, holding that consecutive sentences cannot be required of the dangerous offender "unless the terms reasonably relate[] to the severity of the offenses committed and are necessary in order to protect the public (society) from further criminal acts by those persons who resort to aggravated criminal conduct." The <u>Wilkerson</u> decision, which modified somewhat the strict factual guidelines for consecutive sentencing adopted in <u>State v. Woods</u>, 814 S.W.2d 378, 380 (Tenn. Crim. App. 1991), described sentencing as a "human process that neither can nor should be reduced to a set of fixed and mechanical rules." <u>Wilkerson</u>, 905 S.W.2d at 938.

In ordering an incarcerative sentence, the trial court made the following findings:

> With regard to consecutive or concurrent sentences, I'm going to find that he is both a dangerous offender [with] little or no regard for human life, and he has no hesitation about committing a crime in which the risk to human life is high. . . . [A]lso the aggregate term reasonably relates to the severity of the offenses, and it's necessary in order to protect the public from further serious conduct by the defendant. He is one of these individuals who[m] . . . they describe as ha[ving] knocked the top out of the range. I mean, his behavior is so offensive clearly nothing is going to stop him . . . . Not only that, he was on probation [at the time of the offense].

In our view, the record supports the finding that the defendant qualified for consecutive sentencing for two reasons: because he was on probation for aggravated assault at the time that he committed the offense and because he qualifies as a dangerous offender.

Accordingly, the judgment is affirmed.

 

 

_____
GARY R. WADE, PRESIDING JUDGE