IN THE SUPREME COURT OF TENNESSEE

AT KNOXVILLE

**FILED**

September 27, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| Appellee, | ) | FILED: September 27, 1999 |
| | ) | |
| v. | ) | BRADLEY COUNTY |
| | ) | |
| DAVID KEITH LANE, | ) | HON. R. STEVEN BEBB, JUDGE |
| | ) | |
| Appellant. | ) | NO. 03-S-01-9802-CC-00013 |

For Appellant:                          For Appellee:

KENNETH F. IRVINE, JR.            JOHN KNOX WALKUP
Knoxville, TN                     Attorney General and Reporter

                                  MICHAEL E. MOORE
                                  Solicitor General

                                  TIMOTHY F. BEHAN
                                  Assistant Attorney General
                                  Nashville, TN

                                  JERRY N. ESTES
                                  District Attorney General
                                  Athens, TN

                                  REBBLE S. JOHNSON
                                  Asst. District Attorney General
                                  Cleveland, TN

OPINION

AFFIRMED                                           BIRCH, J.

We granted review in this case in order to resolve two sentencing issues. In the first, the defendant, David Keith Lane, contends that the trial court should have used the criteria set forth in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), (rather than the provisions of Tenn. Code Ann. § 40-35-115(b)(5)(1997)) to determine whether to impose consecutive sentences. In the second, the defendant asserts that he should have been granted alternative sentencing, contending that the trial court's denial of alternative sentencing was based, at least in part, upon a consideration of a conviction since dismissed and expunged from his record. Because we find that the trial court properly applied the laws and principles governing sentencing in both issues, we affirm the judgment of the Court of Criminal Appeals.

I

The complainant, E. S.,[1] a sixteen-year-old female, was placed in the custody of the Tennessee Department of Human Services (DHS) in January 1992. Lane was employed by DHS, and his duties included the counseling of foster-care children in Cleveland. In January 1993, he was assigned as E. S.'s counselor, and he assisted in her foster-care placement with her aunt and uncle.

In August 1994, the foster-care placement was terminated after E. S.'s uncle discovered marijuana under her bed. As her counselor, Lane's duties included transferring E. S. to a Knoxville

---

[1]Due to the age of the complainant and the nature of the offense, we identify by her initials only.

shelter.  Before reaching the shelter, Lane engaged in sexual intercourse with E. S. in the car.  He told her not to tell anyone what they had done and that if she did "people would just think that she was a whore."

This was the first act of a continuing course of unlawful activity between Lane and E. S.  The next encounter occurred after E. S. had run away from a Sevierville facility to which she had been transferred.  At that time, she contacted Lane, who picked her up and drove her to his friend's home in Chattanooga.  En route, Lane encouraged E. S. to smoke marijuana with him.  After arriving at the friend's home, Lane smoked more marijuana with E. S. and engaged in sexual intercourse with her.

After that encounter, E. S. surrendered to the authorities in Cleveland and was released to the custody of her grandfather.  Lane continued to pursue E. S. while she was living with her grandfather, and he engaged in sexual intercourse with her on three occasions during this period.

Following an investigation, Lane was indicted for three counts of statutory rape[2] and three counts of unlawful exercise of official power[3] (all Class E felonies).  He entered pleas of guilty to all counts and was sentenced to the Department of Correction for two years on each count with the statutory rape sentences running consecutively to the sentences for official misconduct, an

---

[2]Tenn. Code Ann. § 39-13-506 (1997).

[3]Tenn. Code Ann. § 39-16-402 (1997).

3

effective sentence of four years.  The trial court denied probation.  The Court of Criminal Appeals affirmed the trial court's sentence.

II

As stated, the trial court imposed consecutive sentencing pursuant to Tenn. Code Ann. § 40-35-115(b)(5) (sexual abuse of a minor).  Lane first asserts that this was error because there were insufficient "aggravating circumstances" to warrant consecutive sentencing under this section.  Specifically, he argues that (1) his status as an "official" should not be considered because it provided the basis for the official misconduct convictions; (2) the time span of the offenses was short; (3) the nature and scope of the sexual acts were "limited"; (4) there was no "residual physical damage" to E. S.; and (5) the "mental damage was minimal."  See Tenn. Code Ann. § 40-35-115(b)(5).

Our review of whether sufficient aggravating circumstances existed to meet the requirements of Tenn. Code Ann. § 40-35-115(b)(5) is governed by Tenn. Code Ann. § 40-35-401(d)(1997).  Accordingly, our review is de novo on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct."  Id.  The burden of showing that the sentence is improper is thus upon the defendant.  State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The Criminal Sentencing Reform Act of 1989 establishes categories of offenders who are eligible for consecutive sentencing. As stated, the trial court based consecutive sentencing in this case on the fifth category, which provides:

> The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims.

Tenn. Code Ann. § 40-35-115(b)(5).

Our review of the record demonstrates the following circumstances which support the imposition of the consecutive sentences. First, the relationship between Lane and E. S. was one wherein she, and the State, entrusted her welfare to Lane. As E. S.'s DHS counselor, he was bound to counsel and protect her.[4] Instead, Lane exploited the relationship by smoking marijuana with her and by engaging in sexual intercourse with her.[5] Furthermore,

---

[4]The fact that this relationship also led to the convictions for official misconduct is irrelevant for purposes of consecutive sentencing. Tenn. Code Ann. § 40-35-114 (1997) prohibits the use of an "essential element of the offense" as an enhancement factor. However, no such prohibition is found concerning consecutive sentencing under Tenn. Code Ann. § 40-35-115.

[5]The victim impact statement included the following assertion by E. S.:

> I was a child of 16; I didn't have anyone else at that time so [the defendant] used his position above me to sleep with me, and managed to make me believe it was all

Lane persisted in this egregious conduct for over a month and terminated it only when he was confronted by the Tennessee Bureau of Investigation. Without question, the nature and scope of the sexual acts between Lane and E. S. were reprehensible. Finally, the record supports the trial court's finding that E. S. suffers from "residual mental damage" as a direct result of Lane's abuse.[6] Accordingly, the State has proven sufficiently aggravating circumstances accompanying the sexual offenses, as required by Tenn. Code Ann. § 40-35-115(b)(5).

Lane next asserts that even if sufficient aggravating circumstances were proven, the trial court erred in imposing consecutive sentences without first complying with the requirements of State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). Lane relies on Wilkerson to support the proposition that before a court may order consecutive sentencing of any defendant under Tenn. Code Ann. § 40-35-115(b), it must make specific findings that "an extended sentence is necessary to protect the public" and is "reasonably related to the severity of the offenses committed." See id. at 939. The Court of Criminal Appeals rejected this argument, stating that "the opinion in Wilkerson may be fairly construed to apply only to consecutive sentencing of dangerous offenders."[7]

---

my fault and I was a bad person and needed what was coming toward me with being sent off.

[6]By the time of sentencing, E. S. had undergone counseling and continued to suffer from sleeplessness and other emotional problems resulting from Lane's acts.

[7]Lane was not adjudicated a "dangerous offender" as defined under Tenn. Code Ann. § 40-35-115(b)(4). However, the appellate court went on to find that even if the reasoning of Wilkerson did apply to the sentencing of this defendant, consecutive sentencing

Thus, the instant case presents us with the opportunity to clarify the limits of the <u>Wilkerson</u> holding. We review this question of law de novo with no presumption of correctness. <u>See</u> <u>id.</u> at 935. To resolve this issue, we must examine our holding in <u>Wilkerson</u> and review the statutory principles of consecutive sentencing.

As previously noted, the Sentencing Act sets forth the categories of offenders eligible for consecutive sentencing. <u>See</u> Tenn. Code Ann. § 40-35-115. The Act also includes general principles of sentencing which trial courts must consider in determining the length of a defendant's sentence. The relevant provisions are that the length of the sentence must be "justly deserved in relation to the seriousness of the offense"[8] and "should be no greater than that deserved for the offense committed."[9]

In <u>Wilkerson</u>, the defendant satisfied the statutory definition of a "dangerous offender" under Tenn. Code Ann. § 40-35-115 (b)(4).[10] <u>Id.</u> at 937-38. However, the facts of that case did not support the consecutive confinement imposed.[11] We thus

_____

was appropriate in this case.

[8]Tenn. Code Ann. § 40-35-102(1)(1997).

[9]Tenn. Code Ann. § 40-35-103(2)(1997).

[10]The defendant's conduct indicated no regard for human life and no hesitation before committing a crime in which the risk to human life was high. <u>Wilkerson</u>, 905 S.W.2d at 937-38.

[11]According to the opinion, the defendant was a first-time offender convicted of vehicular homicide and vehicular assault after a drunk-driving accident. <u>Id.</u> at 934. The defendant's erratic behavior around the time of the accident, however, was

concluded that satisfying the definition of subsection 115(b)(4), was not, in and of itself, "sufficient to sustain consecutive sentences." Id. at 938. Under the Sentencing Act, there must also exist "particular facts" which show that consecutive sentencing is "reasonably related to the severity of the offenses" and serves to protect society "from further . . . aggravated criminal conduct." Id. In order to limit the use of the "dangerous offender" category to cases where such "particular facts" exist, this Court held that sentencing courts must make specific findings regarding the severity of the offenses and the necessity to protect society before ordering consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(4). Id. at 939.

The requirement that a court make these specific findings before imposing a consecutive sentence on a "dangerous offender" arises from the fact that of all of the categories for consecutive sentencing, the dangerous offender category is the most subjective and hardest to apply. Section 40-35-115(b)(5) on the other hand, is illustrative of the self-contained limits found in the other categories for consecutive sentencing. Under subsection 115(b)(5), before the perpetrator of more than one sexual offense against a minor can be exposed to consecutive sentencing, the court must consider the previously discussed aggravating circumstances. Thus, by definition, Tenn. Code Ann. § 40-35-115(b)(5) is limited to those defendants whose conduct justifies extended confinement under the principles of the Sentencing Act. Accordingly, the Court of

_____

attributed to a manic-depressive disorder which was under control by medication by the time of sentencing. Id. at 937.

8

Criminal Appeals correctly held that <u>Wilkerson</u> is limited to cases involving consecutive sentencing of "dangerous offenders." Consequently, the trial court did not err in ordering consecutive sentencing in this case.

III

Lane's next issue is whether the trial court erred in denying alternative sentencing. Specifically, he contends that the trial court improperly considered a previously expunged[12] out-of-state conviction. Although we have addressed the use of such convictions in the context of judicial diversion, this is an issue of first impression as it relates to alternative sentencing under Tenn. Code Ann. § 40-35-102.

At sentencing, Lane sought probation or a sentence of split confinement.[13] The trial court denied these alternative sentences and imposed a sentence to the Department of Correction. The trial court's decision was based, at least in part, on the criminal behavior which led to a theft conviction in North Dakota, since expunged but included in the presentence report.

In <u>State v. Schindler</u>, 986 S.W.2d 209 (Tenn. 1999), this Court addressed the use of expunged convictions in the sentencing

---

[12]Expungement removes from certain official records information relating to the defendant's arrest, indictment, trial, finding of guilt, and dismissal and discharge. Tenn. Code Ann. § 40-35-313(a)(2)(b)(Supp. 1998).

[13]<u>See</u> Tenn. Code Ann. § 40-35-306 (1997)(Split confinement - Probation following partial service of sentence).

process.  The defendant in that case was denied judicial diversion[14] based on the trial court's consideration of two expunged out-of-state convictions.

In Schindler, this Court examined the status of an expunged conviction.  We stated as follows:

> Expungement returns the person to the position "occupied before such arrest or indictment or information." Tenn. Code Ann. § 40-35-313(b).  Expungement does not return a person to the position occupied prior to committing the offense.  . . . Accordingly, the law would blind itself to reality if the law refused to recognize these criminal acts and accord them any legal significance whatsoever.

Id. at 211.  Because expungement does not erase the underlying conduct or behavior, we held that "the testimony and evidence of the criminal acts . . . are admissible as evidence of prior bad acts or evidence of social history even if expungement is later obtained."  Id.

Although the issue in Schindler was raised in the context of judicial diversion, its reasoning and analysis are equally applicable.  Accordingly, the principles outlined in Schindler compel us to conclude that the criminal acts underlying an expunged conviction may properly be considered to determine whether a defendant is a suitable candidate for alternative sentencing.  To

---

[14]Under this form of diversion, a defendant's conviction is dismissed and the record expunged upon successful completion of the conditions imposed by the trial court.  Tenn. Code Ann. § 40-35-313 (Supp. 1998).

the extent that the trial court's decision in this case can be construed as dependent on the mere fact of conviction (as compared to the underlying conduct), we find error in denying alternative sentencing on that basis.

Our inquiry does not stop here. To determine whether the defendant is eligible for alternative sentencing, we must conduct a de novo review of this record, guided by the relevant statutory principles of alternative sentencing. See Tenn. Code Ann. § 40-35-401(d); Ashby, 823 S.W.2d at 169 (Tenn. 1991).

Under the Sentencing Act, a defendant who does not possess "criminal histories evincing a clear disregard for the laws and morals of society" and is "convicted of a Class C, D or E felony," is "presumed to be a favorable candidate for alternative sentencing options." Tenn. Code Ann. § 40-35-102(5), -102(6). The presumption may be overcome, however, by "evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Such evidence may include evidence that confinement is necessary to avoid depreciating the seriousness of the offense or is particularly suited to provide an effective deterrence to others likely to commit similar offenses. State v. Davis, 940 S.W.2d 558, 560 (Tenn. 1997).[15]

_____

[15]"To sustain the denial of probation based solely upon the nature of the offense, the criminal act, as committed, must be 'especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree,' and the nature of the offense must outweigh all factors favoring probation." State v. Cleavor, 691 S.W.2d 541, 543-44 (Tenn. 1985)(quoting State v. Travis, 622 S.W.2d 529 (Tenn. 1981)). To sustain a denial of probation based on its suitability for providing deterrence, the "finding of deterrence cannot be

Besides the expunged theft conviction and two unserved warrants for passing worthless checks, the record also indicates that there were two uncharged incidents of statutory rape and four uncharged incidents of official misconduct emanating from the relationship with E. S.  Furthermore, the defendant provided marijuana and cigarettes to a minor under his supervision knowing her history of substance abuse.  Moreover, he facilitated the complainant's escape from her custodial placement.  The fact that Lane was, at all pertinent times, E. S.'s DHS counselor makes his conduct especially disturbing.  As the Court of Criminal Appeals found:  "The nature and circumstances of the defendant's conduct . . . outweigh all other factors favoring alternative sentencing and, therefore, confinement is necessary to avoid depreciating the seriousness of the offense."  Thus, the abundance of evidence in this case fully rebuts any presumption Lane may have had to alternative sentencing.

IV

In conclusion, we find that because <u>Wilkerson</u> is limited to cases involving consecutive sentencing of "dangerous offenders," the trial court properly imposed consecutive sentencing.  We also conclude that the Court of Criminal Appeals adhered to proper statutory sentencing procedures and duly weighed and considered all appropriate factors.  The abundance of egregious evidence fully rebuts Lane's entitlement to an alternative sentence.

---

conclusory only but must be supported by proof."  <u>Davis</u>, 940 S.W.2d at 560 (quoting <u>State v. Ashby</u>, 823 S.W.2d 166, 170 (Tenn. 1991)).

Costs of appeal are taxed to the defendant.


_____
ADOLPHO A. BIRCH, JR., Justice

Panel:

Anderson, C.J.
Drowota, Holder, JJ.

J. Barker, not participating

13