IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2005

**STATE OF TENNESSEE v. TRAVIS YOUNG**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 03-05457, 59    W. Otis Higgs, Jr., Judge**

---

**No. W2004-01752-CCA-R3-CD  - Filed June 23, 2005**

---

Following a jury trial, Defendant was convicted in case no. 03-05457 of two counts of aggravated assault, a Class C felony, two counts of reckless aggravated assault, a Class D felony, and one count of evading arrest, a Class D felony . Defendant was convicted in case No. 03-05459 of two counts of aggravated robbery, a Class B felony, and one count of aggravated assault, a Class C felony, against victim Christopher Bridges. The trial court sentenced Defendant as a Range II, multiple offender, to six years for each of his Class C and Class D felony convictions. The trial court merged Defendant's aggravated robbery convictions in counts one and two in case No. 03-05459, and sentenced Defendant as a Range I, standard offender, to ten years for the aggravated robbery conviction. The trial court ordered Defendant's sentences in case No. 03-05457 to be served concurrently. The trial court ordered Defendant's sentences in case No. 03-05459 to be served concurrently with each other and consecutively to Defendant's sentence in case No. 03-05457, for an effective sentence of sixteen years. On appeal, Defendant challenges the sufficiency of the convicting evidence and the imposition of consecutive sentencing. Defendant does not challenge the length of his sentences. Following our review of the record, we affirm Defendant's convictions. We remand for a new sentencing hearing because the trial court failed to make specific findings justifying the imposition of consecutive sentencing, failed to identify and support the enhancement factors used to enhance Defendant's sentences for his Class D and Class B felony convictions; and failed to identify which specific convictions it was relying upon to classify Defendant as a multiple offender for sentencing him for his Class D and Class C felony convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed in Part
and Reversed in Part; Convictions are Affirmed,
Sentences are Reversed, and these cases are Remanded for a New Sentencing Hearing**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender; W. Mark Ward, Assistant Public Defender; and Timothy Albers, Assistant Public Defender, Memphis, Tennessee, for the appellant, Travis Young.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; Paul Goodman, Assistant District Attorney General; and Michael McCusker, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Christopher Bridges testified that he knew Defendant only by his nickname "T-Money." On February 25, 2003, Mr. Bridges picked Defendant up at his house in Memphis around 10:00 a.m., and the two men went to lunch at Church's Chicken, a restaurant. Mr. Bridges said that it had been snowing, and the restaurant's dining room was closed. Mr. Bridges bought food at the drive-through window, and the two men went to the Southern Sun Motel to eat their lunch. Mr. Bridges explained that he did not want to drive around in the snow.

During lunch, Defendant went into the bathroom. When he returned, he was armed with a revolver. Defendant told Mr. Bridges to give him his money, jewelry and car keys. After Mr. Bridges complied with the demands, Defendant left the motel room and told Mr. Bridges not to come out of the room or he would "blow [his] head off." Mr. Bridges, however, followed Defendant to Mr. Bridges' car and asked Defendant to at least return his driver's license and other keys. Defendant shot Mr. Bridges in the leg twice and drove off. Mr. Bridges said he owned a white 1994 Mazda 626.

On cross-examination, Mr. Bridges said that he had known Defendant for about two months, and the two men were becoming friends. Mr. Bridges said that he had been to the Southern Sun Motel before, but not with Defendant.

On February 27, 2003, Officer Harold Tellez with the Memphis Police Department and Officer Jeffrey Jensen with the Shelby County Sheriff's Department were riding patrol together in an unmarked police car. They had previously received information from the West Precinct Task Force concerning the stolen Mazda, including the vehicle's license plate number and a picture of Defendant. The officers spotted a white Mazda traveling south on Elvis Presley Boulevard. Officer Jensen pulled in behind the Mazda, and Officer Tellez verified that the vehicle's license plate number matched Mr. Bridges' license plate number. Officer Jensen activated his emergency equipment, but Defendant refused to pull over. The cars reached an intersection, and Defendant slammed on his brakes. Officer Jensen's vehicle and another police car which had joined the pursuit swerved to miss Defendant's vehicle, and both police cars ended up in front of the Mazda. Defendant drove between the two police cars, hitting Officer Jensen's vehicle in the process.

Officer Jensen and Officer Tellez continued to follow Defendant. Defendant turned abruptly onto an entrance ramp to the interstate, and Officer Jenson's vehicle spun out of control when he attempted to follow. The vehicle stopped in the mud next to the road. Officer Tellez pushed the vehicle back onto the ramp, and the two rejoined the chase.

Defendant drove toward the Mississippi state line. Several Mississippi police vehicles had set up a roadblock across the interstate near the state line. When Defendant spotted the roadblock, he made a u-turn and headed back to Memphis. When Officer Jensen attempted to turn around, his vehicle got stuck in the wet ground on the median.

Officer Tellez said that he was concerned that he and Officer Jensen were going to be injured during the chase. He said that the chase occurred around 7:00 p.m or 8:00 p.m., and there was "a lot of" traffic on the road, especially the interstate. Both officers said they were trained to handle pursuit situations.

Officer Casey Kirby with the Memphis Police Department said that he became the first vehicle in line behind the Mazda when Defendant exited the interstate after the u-turn near the state line. Officer Kirby was driving a marked police car and had activated his emergency equipment. Defendant kept braking sharply in an attempt to make Officer Kirby's car strike the Mazda in the rear.

Defendant entered the interstate again, and Officer Kirby was able to pull up beside Defendant. Defendant swerved his vehicle into Officer Kirby's, causing the police car to crash into the guard rail. Defendant's car spun around because of the impact, and the Mazda stopped facing the wrong way on the interstate. Officer Kirby said that at times during the pursuit he was driving around 125 miles per hour.

Officer Carolyn Chambers with the Shelby County Sheriff's Department was driving an unmarked police car behind Officer Kirby's vehicle. She said that Defendant's vehicle hit her car head on. Her air bags deployed but she managed to get out of the car. Officer Chambers said that Defendant frequently braked his vehicle during the pursuit, trying to get the police cars to hit the Mazda in the rear. Officer Chambers said that Defendant had the volume of the Mazda's radio turned up, and he was talking on his cell phone as he drove.

Officer Greg Tacker with the Memphis Police Department said that between forty and fifty police vehicles were ultimately involved in the chase. Officer Tacker said that at times the vehicles involved were driving between 100 and 110 miles per hour. Officer Tacker saw the Mazda strike Officer Kirby's car. Officer Tacker said that only one person exited the Mazda when it stopped. Defendant ran across the interstate and down an embankment. He was attempting to climb the chain link fence surrounding the interstate when police dogs brought him down. Officer Tacker handcuffed and searched Defendant. He did not find any drugs or weapons on Defendant.

Officer Norman Peter Benjamin searched Defendant when he was brought to the Regional Medical Center for treatment of his dog bites. Officer Benjamin said he found various items with Mr. Bridges' name, an earring, and a ring in Defendant's pockets.

Officer Richard Phillips knew that Defendant used the nickname "T-Money." He included Defendant's photograph in a line-up which was shown to Mr. Bridges. Mr. Bridges identified Defendant as the man who robbed him and stole his car.

## II. Sufficiency of the Evidence

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted of aggravated robbery and aggravated assault of Christopher Bridges. A person commits aggravated assault if he or she intentionally or knowingly commits an assault against another which causes serious bodily injury to the person, or the perpetrator uses or displays a deadly weapon during the assault. Tenn. Code Ann. § 39-13-102(a)(1). As relevant here, an assault is committed when the perpetrator "intentionally, knowingly or recklessly causes bodily injury to another." *Id*. § 39-13-101(a)(1).

"Robbery" is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id*. § 39-13-401(a). A robbery offense is elevated to aggravated robbery if the robbery is accomplished with a deadly weapon or the victim suffers serious bodily injury. *Id*. § 39-13-402(a).

Christopher Bridges testified that Defendant went into the motel room's bathroom and armed himself with a revolver. Defendant took Mr. Bridges' money, jewelry and car keys. When Mr. Bridges approached Defendant as he sat in Mr. Bridges' car, Defendant shot Mr. Bridges twice in the leg. Officer Benjamin recovered some of Mr. Bridges' stolen property from Defendant after Defendant was arrested on February 27, 2003 while driving Mr. Bridges' Mazda. Defendant argues that Mr. Bridges' credibility was in dispute because of the questionable circumstances under which the two men met on the day of the offenses. The assessment of a witness's credibility, however, "is always left to the jury." *State v. Coley*, 32 S.W.3d 831, 835 (Tenn. 2000). The evidence is sufficient

for a rational trier of fact to find Defendant guilty of all of the essential elements of aggravated robbery and aggravated assault beyond a reasonable doubt.

Defendant was convicted of two counts of aggravated assault against Officer Chambers and Officer Kirby. The indictment charged Defendant with committing the offenses by intentionally or knowingly using a deadly weapon, namely a motor vehicle, which caused the officers to reasonably fear imminent bodily injury. *See* Tenn. Code Ann. §§ 39-13-101(a)(2) and 39-13-102(a)(1)(b). A motor vehicle can constitute a deadly weapon for purposes of Tennessee Code Annotated section 39-13-102(a)(1)(b). *See State v. Tate*, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995). Officer Kirby testified that Defendant intentionally swerved his vehicle into his marked police car causing Officer Kirby to crash into the guard rail. Officer Kirby said the vehicles were traveling "pretty fast" when he was hit, and that he was scared that he was going to be seriously injured or killed. Officer Chambers said that Defendant accelerated his vehicle after Officer Kirby's car was immobilized and struck her vehicle head on. Officer Chambers estimated that the cars were traveling approximately sixty miles per hour at that point, and the impact activated her vehicle's air bags. Officer Chambers said that she suffered soreness in her upper body as a result of the crash. Based on the testimony presented, the jury could have concluded beyond a reasonable doubt that Defendant knowingly or intentionally drove his car into the vehicles of Officers Kirby and Chambers at a high rate of speed causing them to reasonably fear imminent bodily injury. The evidence is sufficient to support Defendant's convictions of aggravated assault.

Defendant was convicted of two counts of reckless assault against Officers Tellez and Jensen. A person:

> acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Tenn. Code Ann. § 39-11-302(c).

Defendant led Officers Tellez and Jensen on a high speed chase through secondary roads as well as the interstate. Officer Tellez testified that Defendant braked hard at an intersection causing Officer Jensen's vehicle to spin around when he attempted to stop. Defendant's car struck the officers' vehicle as he squeezed past them at the intersection. Defendant swerved abruptly onto an entrance ramp to the interstate. Officer Jensen attempted to follow, and his vehicle spun around several times. Based on the circumstances surrounding the high speed chase, a reasonable jury could conclude beyond a reasonable doubt that Defendant was aware of and consciously disregarded the risk to Officers Tellez and Jensen created by his conduct. *See State v. Gillon*, 15 S.W.3d 492, 497 (Tenn. Crim. App. 1997). The evidence is sufficient to support Defendant's two convictions of reckless aggravated assault.

Defendant was convicted of Class D felony evading arrest. "It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee . . . any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop." *Id*. § 39-16-603(b)(1). Felony evading arrest is a Class D felony if "the attempt to allude create[d] a risk of death or injury to innocent bystanders or other third parties." Tenn. Code Ann. § 39-16-603(b)(3).

Officer Tellez testified that Officer Jensen activated the emergency equipment of their vehicle while they pursued Defendant. Officer Tacker said that forty to fifty police vehicles eventually joined the high speed chase. After Defendant's car stopped, Defendant fled on foot and was attempting to scale the chain link fence surrounding the interstate when he was brought down by police dogs. Officer Tellez said that the chase occurred around 7:00 p.m. or 8:00 p.m., and that there was a lot of traffic on the roads, particularly the interstate. At some point, patrol cars blocked the entrance ramps to the interstate so that civilian traffic could not enter. However, Officer Tellez said that Defendant ignored stop signs while driving on the secondary roads, and drove between 50 to 55 m.p.h. in the residential areas, and 60 to 65 m.p.h. in the business districts. Officer Tellez said that Defendant's driving was a threat to the other motor vehicles on the road during the pursuit. The evidence is sufficient to establish that Defendant fled from law enforcement officers after receiving a signal to stop, and his flight in a motor vehicle created a risk of death or injury to other motorists on the road during the chase. The record clearly supports the jury's finding that Defendant was guilty of Class D felony evading arrest beyond a reasonable doubt.

## III. Sentencing Issues

At the sentencing hearing, the trial court considered the pre-sentence report and the circumstances surrounding the commission of the offenses. The trial court found that Defendant had committed two offenses as a juvenile involving theft of property over $500, which would be classified as Class E felonies if Defendant had committed the offenses as an adult. Based on the presence of these two juvenile adjudications, the trial court sentenced Defendant as a Range II, multiple offender, for his Class D felony convictions for reckless aggravated assault and felony evading arrest, and his Class C felony convictions for aggravated assault. The trial court sentenced Defendant as a Range I, standard offender, for his Class B felony conviction.

Without specifying which enhancement or mitigating factors it considered, if any, the trial court sentenced Defendant to six years for each Class D felony conviction; six years for each Class C felony aggravated assault conviction; and ten years for his Class B felony aggravated robbery conviction.

In addition, without any discussion, the trial court ordered Defendant's sentences in case No. 03-05459 to run consecutively to the sentences in case No. 03-05457. A trial court may impose consecutive sentences if it finds by a preponderance of the evidence the existence of one or more of the statutory criteria in Tennessee Code Annotated section 40-35-115. The trial court is also required to determine whether consecutive sentencing is "justly deserved in relation to the seriousness of the

offense" and "no greater than that deserved for the offense committed." *Id.* §§ 40-35-102(1) and -103(2). If the trial court bases its imposition of consecutive sentencing on a finding that Defendant is a "dangerous offender," it must find that an extended sentence is necessary to protect the public from further criminal conduct by Defendant, and that consecutive sentencing is reasonably related to the severity of the offenses. *State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999); *State v. Wilkerson*, 905 S.W.2d 933, 938 (Tenn. 1995). The trial court made no findings on the record to support its imposition of consecutive sentencing.

A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). It is the duty of this Court to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the trial court fails to consider the requisite sentencing principles, our review is *de novo* without a presumption of correctness. *Id.*

The trial court imposed the minimum sentence within the sentencing range for a Range II, multiple offender, convicted of a Class C felony. Tenn. Code Ann. § 40-35-112(b)(3). The record in this case, however, is totally devoid of any findings supporting the enhancement of Defendant's sentences for his Class D and Class B felony convictions, or the imposition of consecutive sentencing. "To facilitate appellate review, the trial court 'must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence." *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997) (quoting *State v. Jones*, 883 S.W.2d 597, 601 (Tenn. 1994)); *see also State v. Ervin*, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). The Sentencing Act also requires the trial court to make specific findings embodying the general principles of sentencing before imposing consecutive sentencing. *Lane*, 3 S.W.3d at 460-61. In addition, the trial court must make specific findings regarding the *Wilkerson* factors if the defendant is classified as a "dangerous offender." *Id.* Without any findings whatsoever, this Court is unable to conduct a meaningful appellate review.

Although not raised by Defendant as an issue on appeal, we note for purposes of resentencing that the record does not appear to support the trial court's classification of Defendant as a Range II, multiple offender when sentencing him for his Class C and Class D felony convictions. When convicted of a Class C or Class D felony, a defendant will be considered a "multiple offender" if he or she has received "a minimum of two. . . but not more than four . . . prior felony convictions within the conviction class, a higher class, or within the next two lower felony classes . . . ." Tenn. Code Ann. § 40-35-106(a)(1). The State presented a judgment in case No. 99-00561 at the sentencing hearing which showed that Defendant was convicted as an adult of theft of property over $500 value,

a Class E felony. According to the pre-sentence report, the remainder of Defendant's criminal history as an adult includes one misdemeanor criminal trespass conviction, one misdemeanor conviction for theft of property less than $500 value, and one misdemeanor conviction for simple possession of marijuana.

It appears, therefore, that the trial court based Defendant's multiple offender status on two juvenile adjudications for theft of property over $500 but less than $1,000 value, which, if committed as an adult, would be Class E felonies. *See* Tenn. Code Ann. § 39-14-105(2). A juvenile adjudication, however, will not be considered a "prior conviction" for the purposes of determining the defendant's multiple offender status, unless: (1) the juvenile act would constitute a felony if committed as an adult; (2) the juvenile act resulted in the juvenile's transfer to criminal court to be dealt with as an adult pursuant to Tennessee Code Annotated section 37-1-134; and (3) the defendant was convicted of the felony in criminal court. *Id.*

According to the pre-sentence report, Defendant committed the offenses of theft of property over $500 value on April 11, 1999, when he was thirteen years old, and again on October 13, 1994, when he was fourteen years old. For the first theft offense, Defendant was placed under the supervision of the Youth Services Bureau's Hanover House Program. After commission of the second theft offense, Defendant was placed in the Youth Services Bureau's Shelby Training Center. Because Defendant was not dealt with as an adult for these offenses, and because Defendant's adult criminal record shows only one Class E felony conviction, we conclude that the trial court erred in sentencing Defendant as a Range II, multiple offender, for his Class D and Class C felony convictions.

Because the trial court failed to articulate which enhancement or mitigating factors it considered in determining the length of Defendant's sentence and failed to make specific findings supporting its imposition of consecutive sentencing, we remand this case to the trial court for a new sentencing hearing. On remand, the trial court must identify any mitigating and enhancement factors found, state the specific facts supporting each enhancement factor, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the length of Defendant's sentences. The trial court must also identify the specific prior convictions it is relying upon if it again finds that Defendant is a Range II, multiple offender.

If the trial court concludes that consecutive sentences should be imposed, the trial court must state which facts in the record it finds to support this determination, how the effective aggregate sentence relates to the seriousness of the offenses, and whether the effective aggregate sentence is "no greater than that deserved for the offense." *See* Tenn. Code Ann. §§ 40-35-102(1) and 40-35-103(2). In addition, if the trial court bases its imposition of consecutive sentencing on a finding that Defendant is a "dangerous offender," "there must exist 'particular facts' which show that consecutive sentencing is 'reasonably related to the severity of the offenses' and serves to protect society 'from further . . . aggravated criminal conduct.'" *Lane*, 3 S.W.3d at 461 (quoting *Wilkerson*, 905 S.W.2d at 938).

## CONCLUSION

For the foregoing reasons, we affirm Defendant's convictions, but remand to the trial court for a new sentencing hearing consistent with this opinion.

_____
THOMAS T. WOODALL, JUDGE