# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 21, 2013

## STATE OF TENNESSEE v. WILLIAM RICHARD HICKS, ALIAS BILLY RICHARD HICKS

**Appeal from the Criminal Court for Knox County**
**Nos. 91142, 91215, 96070, 96237     Steven W. Sword, Judge**

---

**No. E2012-00063-CCA-R3-CD - Filed October 18, 2013**

---

The defendant, William Richard Hicks, alias Billy Richard Hicks, appeals from his convictions for various alcohol- and driving-related offenses, which we will detail, the most serious of which were DUI, tenth offense, and violation of the habitual motor vehicle offender ("HMVO") statute. He was sentenced as a Range III, persistent offender to six years for each of these convictions, with the HMVO sentences to be served consecutively and the DUI and misdemeanor convictions to be served concurrently, for an effective sentence of eighteen years. From these sentences he appeals, arguing that his sentences are excessive and that the court erred in ordering they be served consecutively. Following our review, we affirm the judgments of the trial court but remand for entry of a corrected judgment in Case No. 91142, Count 5, to reflect the length of the defendant's sentence as eleven months, twenty-nine days, which was omitted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded for Entry of Corrected Judgment**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

Patrick T. Phillips, Knoxville, Tennessee, for the appellant, William Richard Hicks, alias Billy Richard Hicks.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Randall E. Nichols, District Attorney General; and Kenneth F. Irvine, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# FACTS

First, we will detail the defendant's charges, trials, and convictions. Because he is contesting his sentencing rather than the sufficiency of the evidence of his convictions, we will provide synopses of the evidence in each of the matters to establish the bases for the convictions.

## Case Nos. 91142 and 91215

The events resulting in these convictions occurred on the early morning of November 6, 2008, when the defendant was stopped for driving without a seatbelt and was unable to produce a driver's license. He provided to the officer a false name, date of birth, and social security number. Detecting an odor of alcohol on the defendant's breath, the officer directed that the defendant perform three different field sobriety tests, two of which the defendant, who had refused to submit to a blood alcohol test, failed. Subsequently, it was determined that the defendant's driver's license had been revoked and that on November 13, 2001, he had been declared a habitual motor vehicle offender.

In Case No. 91142, the defendant was convicted of DUI, tenth offense; driving on a revoked license, second or subsequent conviction; and criminal impersonation. He was sentenced to concurrent terms of six years, eleven months and twenty-nine days, and six months, respectively. However, on the judgment form for the driving on a revoked license conviction, Count 5, the sentence length was omitted. We remand for entry of a corrected judgment in that count to reflect the defendant's sentence as eleven months, twenty-nine days.

In Case No. 91215, the defendant was convicted of violation of the HMVO statute and sentenced to six years, to be served consecutively to Case No. 91142.

## Case No. 96070

The trial in this matter was held on April 4, 2012, with Officer Michael Shawn Tucker, Jr., of the Knoxville Police Department, as the only witness. He testified that on October 23, 2009, he and another officer were conducting routine patrol in an unmarked police car at the intersection of North Broadway and Mineral Springs Avenue when they observed the defendant disregard the red traffic signal. They pulled the defendant's vehicle over, and after he could not produce a driver's license or provide proof of financial responsibility, Officer Tucker ran a check on the status of the defendant's license, which

showed that his license had been revoked and that he had been classified as a habitual motor vehicle offender.

The defendant was convicted of violation of the HMVO statute, failure to obey traffic control devices, and failure to provide evidence of compliance with the financial responsibility law. He was sentenced to six years for the HMVO conviction and to concurrent terms of thirty days for each of the misdemeanor convictions. The six-year sentence was ordered to be served consecutively to Case No. 91215.

### Case No. 96237

The defendant's trial in this matter was held on August 22, 2012. The only witness was Sergeant Jonathan Chadwell of the Knoxville Police Department, who said that, on July 6, 2009, he had observed a van he later learned was being driven by the defendant proceeding eastbound on Western Avenue in Knoxville. The defendant could not produce a driver's license, and Sergeant Chadwell determined he had been declared a habitual motor vehicle offender. Entered as an exhibit was an order from the Fentress County Criminal Court, dated November 13, 2001, declaring the defendant to be a habitual motor vehicle offender. The State then rested its case and the defendant did likewise, without presenting proof. The defendant was convicted of violation of the HMVO statute and sentenced to six years, to be served consecutively to Case No. 96070.

From his sentencing in these matters, the defendant appeals, asserting that his sentences are excessive and that the trial court erred in ordering that they be served consecutively.

### ANALYSIS

We will review the sentencing issues presented on appeal by the defendant.

In Case Nos. 91142 and 91215, the trial court sentenced the defendant as follows:

In Case 91142, we have three cases that need to be sentenced on three counts; DUI, [Class] E felony, driving on a revoked license, [Class] A misdemeanor, range of punishment of that is zero days up to 11 months, 29 days; and criminal impersonation, a [Class] B misdemeanor, zero days up to six months; and then 91215 is also an E felony. So in the felonies, I have to first determine what appropriate range [the defendant] falls in. And I do find beyond a reasonable doubt that [the defendant] is a persistent offender which would make him range III. He has five felony convictions in the past, that has

-3-

been provided to the Court through the presentence investigation and is not contested by the defense. So his range of punishment on the two E felonies [is] four to six years as a range III persistent offender.

The next question that I look at is what is the appropriate length of the sentence, and in determining that, I consider the mitigating and enhancement factors as well as the circumstances of the case that's been presented to me, as I've mentioned earlier and have relied upon the presentence memorandum filed by both the defense and the [S]tate in determining that, as well as the arguments that have been heard today, the presentence investigation, and [the defendant's] allocution.

So, first, let me address the mitigating factors in the defendant's sentencing memorandum. They have cited some things that would fit under [Tennessee Code Annotated section] 40-35-113. It's one of the catch-all mitigating factor[s] in that the defendant has attempted to improve himself while incarcerated. He's obtained his GED. He's engaged in these religious studies that we have discussed. He's made further plans for his education. He's completed the Thinking for Change course, as well as some other courses while incarcerated, and . . . as I said is making plans to further that education, and apparently, has been a good impact on some of the other inmates in there. So I do give him some consideration for . . . that list of mitigating factors that fit sort of under the catch-all.

Then under enhancement factors you look at [section] 40-35-114, and the [S]tate has provided four of those. I believe[] that they . . . apply. The first one is that the defendant has a previous criminal history in addition to that necessary to establish the range, and as the general's pointed out, we're dealing with three decades of criminal behavior, twenty-four convictions in Knox County. He's got convictions in Morgan County, Anderson County, Scott County, Fentress County, and the [S]tate of Georgia, and . . . the fact that this [is] a DUI 10th alone would make that enhancement factor valid, and I give that a very large amount of weight.

The 13th factor under [section 40-35-]114 is that the defendant was on bail – or on for another case in which he was . . . subsequently convicted, and that did happen. The defendant was out on bond when he picked up this offense, and the cases he was on bond for he was convicted of, and so I do find that that factor applies as well.

Number 13(c), the defendant was on probation at the time of the offense. He was also on probation while he picked up [sic]. So I think that factor plays [sic] as well. Thirteen (a) and 13(c), I don't give quite as much weight to it although I certainly think they are valid enhancement factors and do give them some weight.

Then the next factor the [S]tate cites is factor 10. Says when the crime that was committed has the risk to human life was high. The defendant engaged in that, that this was a DUI and HMVO. As far as considering that as an enhancement factor, I could be wrong about this, but I think that the nature of DUI is that in and of itself is a crime that the risk to human life is high, and so I don't think you can rely on that in this case, . . . that it should be an enhancement factor. The nature of the crime itself takes into account the fact that the risk to human life is high, and that's why we have mandatory minimum sentences in that. So I don't give any weight to that enhancement factor.

But when you look at all that, particularly, as I stated, the previous criminal history, and this is a DUI 10th, that far outweighs any benefit the defendant should get for the mitigating factors of what he has done while in jail. Has he improved himself? I hope so. But you cannot overcome a past like he has, and so I think the appropriate length on each count is the maximum of six years in 91215, six years in 91142, 11 months and 29 days on the [Class] A misdemeanor, and six months on the [Class] B misdemeanor.

Now, the next thing I have to decide is what's the manner of the service. You look at [Tennessee Code Annotated section] 40-35-120 of what you should consider in that, and the considerations – also [section] 40-35-103 I should quote as well, the considerations for the manner of service. In this case, what I find is when you look at that first one is confinement necessary to protect society by restraining a defendant with a long criminal history. I think that applies. We've already addressed the defendant's long criminal history, and particularly, this is a . . . 10th conviction of this very same offense, DUI, and so I do believe that [section] 40-35-103 is met in favor of the [S]tate's request that he serve that in confinement.

The next factor you look at is, is it necessary to avoid deprecating the seriousness of the offense, and as I've mentioned, this is the 10th DUI, and how much more serious does it get? If he were to get the minimum amount of time on a fourth DUI, then what happens to – you're giving . . . no

consideration for the fact that this is the sixth one that he's picked up after his fourth, and so I think that factor applies here in favor of incarceration.

Then confinement particularly suited as an effective deterrence to others for similar crimes. Well, our legislature obviously thinks that is true in DUI, because . . . they have set minimum mandatory amounts of time that you have to spend in jail on a DUI, and it keeps going up, and so obviously, the legislature believes that incarceration is a well-suited deterrence for this type of behavior, and so I find that applies in this case as well.

And then have measurements less restrictive, frequently or recently been tried and were unsuccessful, and that is true. The defendant was on probation at the time. He's had multiple, multiple, multiple attempts at probation.

. . . .

Well, that's my finding, that we have tried probation frequently and recently, and [the defendant has] failed, and so I think that factor weighs in favor of incarceration as well.

And then what you consider the potential or lack of potential for rehabilitation or treatment as to the length or manner of service. In this case, even though there have been some good things accomplished by [the defendant] while he's been incarcerated, the fact that we are so far down the road, that this is the 10th offense over a 30-year period of time, I have no faith at all that [the defendant] can be rehabilitated, and so I find that factor also weighs in favor of confinement.

And then you have to consider . . . is incarceration the least severe [measure] necessary, and I do find that it is. Split confinement I believe is not sufficient enough to accomplish the principles of sentencing under [section] 40-35-307. This is an individual who has a minimum I think is 150 days on an E felony, this is his 10th one, and so a split confinement I do not think would accomplish the sentencing principles.

And then to the last big question, consecutive versus concurrent, and then you look at [section] 40-35-115(b), and by preponderance of the evidence of these factors found by the Court, and the first one you consider is, is the defendant a professional criminal who has knowingly devoted the

-6-

defendant's life to criminal acts as a major source of livelihood? I don't find that to be the case in [the defendant's] . . . criminal endeavors. Certainly there's some of them that you might look at was a – to be engaged in criminal livelihood, but the vast majority of it, that is not the case. So I do not find that that factor weighs in favor of consecutive sentences.

The second one, is [the] defendant an offender whose record of criminal activity is extensive, and as I've stated over and over again in my ruling, I do find that to be the case, and I find that to be a very substantial factor in my reasoning in this case, well beyond a fourth or subsequent. This is the 10th offense, and on DUI alone, not to mention the other convictions he has.

Third, [the] defendant is a dangerous mentally abnormal person so declared by [a] competent psychiatrist, that factor does not apply in this case. So I do not find that that weighs against [the defendant] and would be in favor of concurrent sentences.

Fourth, the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Now, I previously found that that is not an appropriate enhancement factor, because I believe that the nature of DUI assumes that that is true. However, I think that is an appropriate factor for me to consider in the purposes of consecutive versus concurrent sentences. In this case, the two felonies we're looking at are DUI and habitual motor vehicle offender, and the HMVO shows us that this is a defendant who has been repeatedly convicted of driving-related offenses and has continued to do so, and the fact that his license was suspended for multiple DUIs makes me believe that that is an appropriate factor that I can consider, that he's going to continue to engage in this conduct even though it's a high risk for the community, and he's showing no regard for human life repeatedly, for doing that.

The fifth factor, the defendant is convicted of two [or] more statutory offenses involving sexual abuse of a minor[,] does not apply.

And then, six, the defendant is sentenced for an offense committed while on probation. The presentence investigation report indicated that he was on probation. He contests that now. In any event, I don't believe I need to make a finding on that, because I've already sufficiently found factors that

-7-

weigh in favor of consecutive sentencing, and then after you find those factors you're also required to determine whether or not consecutive sentences are reasonably related to the severity of the offenses committed.

In this case, as far as DUI goes, there can be nothing more severe than a 10th offense as well as driving while habitual motor vehicle offender status is in effect. HMVO was designed for nothing but to keep people who are repeat offenders from driving, and he's continued to do that, and that's about as severe as it gets when it comes to driving . . . while a HMVO, and to do so while intoxicated.

And also do[] consecutive[] sentence[s] serve to protect the public from further conduct by the offender, and that's what the [S]tate has relied on heavily, and I think they are well-informed in making that opinion. Every time [the defendant] has gotten behind the wheel of a car while intoxicated, and we know of at least 10 times, he has put this community in danger, and so I believe that consecutive sentences are necessary to protect the public, and I also find that consecutive sentences are congruent with the general principles of sentencing that I have briefly mentioned this morning and rely upon.

So it is the order of the Court . . ., Mr. Hicks – upon finding of guilt by a jury in your case, I'm going to sentence you in case No. 91142 . . . your DUI conviction felony to six years as a range III persistent offender to be served in the Tennessee Department of Correction[]. I'm going to sentence you in the next count[,] driving while your license was revoked, [Class] A misdemeanor, to 11 months and 29 days to be served concurrent with the DUI count 2.

I'm going to sentence you to six months for criminal impersonation also to be served concurrent with count 2 in 91142. Then in case No. 91215, going to enter judgment on your . . . driving while . . . habitual motor vehicle offender was in effect to six years on that count, and I'm going to order that it be served consecutive with 91142 for a total effective sentence of 12 years. That is the order of the Court.

In sentencing the defendant in Case No. 96070, the trial court explained in detail its reasoning in setting the lengths of the sentences and determining that the HMVO six-year sentence should be served consecutively to Case Nos. 91142 and 91215:

I have reviewed the presentence memorandums filed by both sides. I appreciate you each doing that, and I've reviewed the file on [the defendant's]

-8-

cases. Today we're here for sentencing on driving as a motor vehicle habitual offender, that's a class E felony, and guilty of running a red light in count No. 2, which is a class C misdemeanor. In count No. 3 he was found guilty of failing to provide proper evidence of financial responsibility, which is also a class C misdemeanor.

And so as I review his case, I do find beyond a reasonable doubt that the defendant is a persistent offender based upon his previous history. Those have been admitted in court before. The Court's file is replete with those prior convictions, and so as a persistent offender on the class E felony, the range of punishment is anywhere from four to six years.

And I do find as well that it is necessary that this be a sentence to serve in the Tennessee Department of Correction[]. I do believe confinement's necessary in this case to restrain the defendant who has a long criminal history. He has 24 Knox County convictions as well as convictions from Georgia and four other Tennessee counties, an extremely long record.

And I also find that confinement is particularly suited as an effective deterrence for others. Obviously, our legislature thinks so because they've made mandatory jail time for DUIs and HMVO, and he's been on probation before, and I don't think [the defendant] presents much hope for rehabilitation at all. Therefore, there's no doubt in my mind that this should be a sentence to serve between four to six years, and I also find that under [Tennessee] Rule [of Criminal Procedure] 32(c)(3)(C) that this is mandatory. He was out on bond on [Case Nos.] 91142 and 91215; and therefore, the sentence, whatever it is, will run consecutive to those cases.

And the [S]tate is asking for the maximum length of time of six years, and is relying on the nature of this case as well as a couple of enhancement factors: One, the number of prior convictions that the defendant has beyond what's necessary to place him as a range III persistent offender, and I do find that that is true, that the defendant does . . . have a significant criminal history that has gone on for years and years and years, and nothing has seemed to be able to dissuade [the defendant], short of custody, from engaging in criminal behavior. The [S]tate also relies on [the] enhancement factor that the defendant was on bail at the time that he committed this most recent offense, and I do find that that factor applies as well.

And the defense has cited a couple of reasons that the Court should

-9-

mitigate that: One, that the defendant's criminal conduct neither caused nor threatened serious bodily injury. I do find, in fact, though, driving as a HMVO is, in fact, threatening serious bodily injury. Anytime the defendant is behind the wheel he's threatening our community, and so I don't think that should be used to . . . mitigate this. The strongest argument, I think the defense makes is mitigating factor No. 8 which is the defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense. However, the voluntary use of intoxicants does not fall within the purview of this factor.

I review[ed] [the defendant's] mental health records that appears that there are at least diagnoses that are found. I don't know if that's self-reporting or if there was testing, but . . . these reports indicate that he's bipolar and has agoraphobia and suffers from depression, and I, obviously, don't doubt that those are accurate assessments of [the defendant], but I don't think they play a role in mitigating this action. This was an action of deciding to get behind the wheel of a car. Agoraphobia should have kept him out of the car.

So I don't think his mental health condition played any role whatsoever in this decision. I think it's repeated behavior that [the defendant] has chosen to do that I don't see how his mental health struggles affect[] that at all, and so whatever degree of mitigation that his mental health issues would present, I think they're outweighed by the enhancement factors, specifically the extreme length of the defendant's criminal history.

And so at this time, Mr. Hicks, I'm going to sentence you in count No. 1 to six years as a range III persistent offender, to be served consecutive to Case[] No[s]. 91142 and 91215. I sentence you to 30 days in count No. 2 to run concurrent with count No. 1, and 30 days in count No. 3 also to run concurrent with count No. 1. That'll be the order of the Court.

In Case No. 96237, after determining that the defendant was a Range III, persistent offender, the trial court sentenced the defendant:

In [Case No.] 96237, [the defendant] was convicted of driving while HMVO was in effect. That's a class E felony, I do find beyond a reasonable doubt that he is a range III persistent offender, and the range of punishment is anywhere from four to six years. [The defendant] has a whole lot of prior convictions outside of the range – or outside of that necessary to make him a range III persistent offender. He has at least 24 Knox County convictions,

multiple out of Georgia and four other counties in Tennessee. He was out on bail . . . on other cases while he picked this up. So under [Tennessee] Rule [of Criminal Procedure] 32(c)(3) this is mandatory consecutive, and so [the defendant] has one of the worst driving histories that I've ever seen with 10 DUI convictions, continues to drive HMVO. I believe confinement is necessary to protect society by restraining someone with such a long criminal history.

I also think it's necessary at this point to confine him to avoid deprecating the seriousness of the offense. This is a matter where an individual has 10 DUIs. He's been ordered multiple times not to drive and continues to do so. Confinement is also particularly suited as an effective deterrence to others. There are mandatory fines for DUI, and when you . . . after losing your license, keep driving, we need to send a message to the community that you can't do that.

Measures less restrictive have frequently been tried in the past. [The defendant] has had opportunities to be on probation, has been unsuccessful on that. I think his potential for rehabilitation is extremely low.

And I believe they are mandatory stacks to the other convictions that he has that are currently before this Court that we're on for motion for new trial today, and I believe the . . . appropriate length of sentence under the sentencing guidelines and principles of our criminal justice in Tennessee is maximum six-year sentence to run consecutive to Case[] No[s]. 91142, 91215, and 96070. I believe that's all of them. So that's going to be the judgment of the Court in those matters.

We now will review the trial court's sentencing of the defendant.

Under the 2005 amendments to the sentencing act, a trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

-11-

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Tenn. Code Ann. § 40-35-210(b) (2010).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In State v. Caudle, our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012).

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in the Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is an offender whose record of criminal activity is extensive and the defendant is sentenced for an offense committed while on probation. Id. § 40-35-115(b)(2), (6). Additionally, if the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, see id. § 40-35-115(b)(4), the court must find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999).

In this matter, the trial court explained in detail the bases for its sentencing decisions. It is without question that the defendant has a horrendous record of arrests, convictions, and failures at attempts for rehabilitation. Likewise, the court explained in detail that his

horrendous record of DUI convictions and his continuing to drive while intoxicated mandated his being confined as long as possible to protect the public. In short, if there were ever a case in which the trial court was justified in sentencing the defendant to the maximum terms and ordering that the sentences be served consecutively, this would appear to be it. Accordingly, we conclude that the record supports the sentencing decisions of the trial court.

## CONCLUSION

Based upon the authorities and reasoning set out herein, we affirm the judgments of the trial court but remand for entry of a corrected judgment in Case No. 91142, Count 5, to reflect the length of the defendant's sentence as eleven months, twenty-nine days, which was omitted from the judgment.

_____
ALAN E. GLENN, JUDGE