IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 11, 2005

## STATE OF TENNESSEE v. BOBBY JOE LESTER

**Appeal from the Criminal Court for Shelby County**
**No. 02-02980     Joseph B. Dailey, Judge**

_____

**No. W2004-00842-CCA-R3-CD  - Filed July 28, 2005**

_____

The Appellant, Bobby Joe Lester, was convicted of attempted first degree murder, especially aggravated kidnapping, and coercion of a witness. As a result of these convictions, Lester received an effective eighty-five year sentence. On appeal, Lester argues that: (1) the evidence was not sufficient to support the verdicts; (2) the trial court erred in failing to dismiss a juror; and (3) consecutive sentencing was improper. After a review of the record, we conclude that the proof is sufficient to support Lester's convictions on all counts. Moreover, we conclude issues (2) and (3) are without merit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which J. C. MCLIN, J., joined and DAVID G. HAYES, J., dissented.

Kamilah E. Turner, Memphis, Tennessee, Attorney for the Appellant, Bobby Joe Lester.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; David E. Coenen, Assistant Attorney General; William L. Gibbons, District Attorney General; Reginald Henderson and Paul Hagerman, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

In December of 2003, a Shelby County jury convicted the Appellant of attempted first-degree murder, especially aggravated kidnapping, two counts of aggravated assault, and one count of coercion of a witness. However, the trial court subsequently merged the convictions for aggravated assault with the conviction for attempted first degree murder. The trial court sentenced the Appellant, as a multiple offender, to thirty-nine years for attempted first degree murder and to seven years for coercion of a witness. The court further sentenced the Appellant to thirty-nine years, as a

violent offender, for the especially aggravated kidnapping conviction. The court then ordered that the Appellant's sentences be served consecutively, for an effective sentence of eighty-five years. On February 5, 2004, the Appellant filed a motion for new trial. Following a February 27, 2004 hearing, the motion was denied. This timely appeal followed.

At trial Billie Strong, the victim, testified that she was beaten and raped on April 21, 2001, by Ervon Blair and Tommy Holmes. After she was discovered, she informed the police of the identity of her attackers, resulting in criminal charges against the two men. The victim had previously met Blair and Holmes while visiting her friend Charles Davis at a rooming house on Foster Street in Memphis, where he lived with Blair and Holmes. She also met the Appellant at the rooming house, as he was a friend of Blair and Holmes.

The victim testified that around 11:30 a.m. on June 5, 2001, as she walked to Miller's Grocery Store to use the pay phone, a white transfer truck without the trailer, bearing the markings M. S. Carriers, pulled over on the grass beside her home. The victim had seen the truck circle her home several times earlier that morning as she sat on her front porch. The driver, a man who introduced himself as Jody, called her over and offered to give her a ride. The victim entered the truck, locked the door, and fastened her seatbelt as instructed. At this point, the Appellant, whom the victim recognized as "Joe," pulled back the sleeper curtain located behind her and hit her in the throat with a baseball bat. Holmes, who was also secreted in the truck's cab, then beat her with a hammer and asked her why she had pressed charges against him. He told her to call Sergeant Colbert, the investigating officer, and drop the charges. The victim also testified that after she was beaten, the Appellant tried to wrap her in plastic and "snap" her neck. The victim also stated that the Appellant and Jody raped her and that her assailants forced her to smoke crack cocaine in the truck. While the victim related that she had not used cocaine since her rape in April of that year, State's witness Charles Davis testified that the victim had smoked crack cocaine throughout their entire fifteen-to-twenty-year close friendship. The last thing the victim remembered was lying on the side of the road and somehow rolling out of the truck's path as the truck tried to run over her.

A motorist driving home from work found the victim, undressed and bleeding, in front of an abandoned house on Frayser Boulevard, crawling toward the sidewalk and crying for help. The motorist stopped his car and called 9-1-1 on his cell phone. Officer Keith Seibert of the Memphis Police Department responded to the scene and discovered the victim lying half on the grass and half on the street in front of 2801 Frayser Boulevard. The victim was coming in and out of consciousness.

The victim suffered life threatening injuries as a result of the beating and entered the hospital in extremely critical condition. At trial, the victim testified that as result of the beating of June 5, 2001, her jaw was broken and her teeth were knocked out by the roots. Doctors removed her spleen and inserted three iron plates in her head and a rod in her elbow. Additionally, her first, second, and third vertebras were compacted forcing her to sleep in a sitting position to prevent swelling. Her arm was also partially paralyzed.

Sergeant L. W. Colburn, who was with the Memphis Police Department's Sex Crimes Bureau at the time of the investigation, was involved in the investigation of the victim's cases. He testified that while hospitalized, the victim indicated that Holmes and a man named "Joe" had beaten her on June 5, 2001. He presented the victim with a photo spread, and she identified Bobby Joe Lester as the perpetrator and wrote, "I'll never forget the look he gave me when he first hit me with the bat."

**Analysis**

## I. Sufficiency of the Evidence

The Appellant argues that the evidence in this case is insufficient to support his convictions for attempted first degree murder, especially aggravated kidnapping, and coercion of a witness. The standard of review when an appellant questions the sufficiency of evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1970); Tenn. R. App. P. 13(e). A conviction by a jury removes a defendant's presumption of innocence and replaces it with one of guilt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant has the burden of proving the insufficiency of evidence. *Id.* This court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). A jury's guilty verdict accredits the testimony of the State's witnesses and resolves all conflicts in favor of the prosecution's theory. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

### (a) Attempted First Degree Murder

The Appellant alleges that the evidence in this case is insufficient to convict him of attempted first degree murder. Tennessee Code Annotated section 39-13-202(a)(1) (2003) defines first degree murder as "a premeditated and intentional killing of another." Criminal attempt occurs when a person "[a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part . . . [.]" Tenn. Code Ann. § 39-12-101(a)(2) (2003). The Appellant denies the existence of premeditation, claiming that the perpetrators never intended to kill the victim. Tennessee Code Annotated section 39-13-202(d) relates that:

> "premeditation" is an act done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill pre-exist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

The element of premeditation is a question of fact to be resolved by the jury and may be established by proof of the circumstances surrounding the killing. *Bland*, 958 S.W.2d at 660; *State v. Brown*, 836 S.W.2d 530, 539 (Tenn. 1992). *Bland* outlines several factors supporting premeditation

including "the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing." 958 S.W.2d at 660 (*citing Brown*, 836 S.W.2d at 541-42; *State v. West*, 844 S.W.2d 144, 148 (Tenn. 1992)).

Having considered the proof in the light most favorable to the State, we conclude that the evidence is sufficient to support the jury's finding of premeditation. Prior to the incident, the Appellant and Holmes planned their revenge on Billie Strong, wanting to "get rid of" her. In furtherance of their plan, they discussed and obtained a baseball bat, plastic, duct tape, and other objects. The Appellant and Holmes, along with Blair, cased the victim's home in preparation for the attack. Finally, on June 5, 2001, the Appellant savagely hit the victim in the throat with a baseball bat, wrapped her in plastic wrap, and attempted to snap her neck. Instructions given to the victim to drop the charges against Holmes do not negate the Appellant's intent to kill the victim. Both the extensive planning and the nature of the acts themselves evidence an intent to kill. Accordingly, we find no error.

### (b) Especially Aggravated Kidnapping

The Appellant also contends that the evidence in this case is insufficient to find him guilty of especially aggravated kidnapping because the victim entered the truck willingly, did not attempt to leave the truck, and was not forced to stay. Especially aggravated kidnapping is false imprisonment "accomplished with a deadly weapon or by displaying of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon" or "where the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-305(a)(1), (4) (2003). False imprisonment occurs when "a person . . . knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a) (2003). The element of removal or confinement may be accomplished through either "force, threat, or fraud. . . ." Tenn. Code Ann. § 39-13-301(2) (2003).

Although the Appellant would have us focus on the subjective intent of the victim, in our view, the focus of the fraud analysis is on the elements of trickery or deceit considering, when necessary, any characteristics of the victim that would make him or her particularly susceptible to such elements. *State v. Edward Coleman and Sean Williams*, No. W2001-01021-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 965, at *15 (Tenn. Crim. App., at Jackson, Nov. 7, 2002) (citing 51 C.J.S. *Kidnapping* § 1, p. 498 (1976)).

Considering the proof in the light most favorable to the State, we conclude that the actions of the driver and the appellant indicate an intricate plan to deceive the victim. Specifically, the record reflects that the driver approached the victim's house, spoke with her, and then parked around the corner from her home. Being previously acquainted with the driver, the victim more willingly

accepted his offer to drive her to the store as she walked past.[1]  However, once the victim was in the truck and immobilized by the locked door and the seatbelt, the Appellant and the driver inflicted a series of assaults on the victim, eventually leaving her to die.  In our view, the "nature of the artifice" was such that it constituted a fraudulent inducement.  *Id.*

Furthermore, this court has previously noted "that removal or confinement may initially be with the consent of a victim, yet subsequently become unlawful and against the will of a victim." *Id.* at *17 (citing *State v. Davis*, 656 S.W.2d 406, 409 (Tenn. Crim. App. 1983)) (holding that a confinement that is initially consensual may become a kidnapping "if subsequent events show the person remains with the accused against their will as a result of force or the use of arms by the accused.")  Initially, we find it noteworthy that the victim was assaulted almost immediately after she entered the vehicle; therefore, she did not have an opportunity to attempt to leave before she was attacked.  Furthermore, the victim's testimony reveals that, after she realized the motives of her captors, she expressed her desire to leave but was kept in the truck by physical force and threats of physical force.  Specifically, she stated that she "prayed," pleaded with the Appellant not to kill her, and cried as she was beaten and raped.  In our view, any consensual confinement certainly became otherwise when the victim's assault began.

In sum, the testimony reveals that the victim's intention was to walk to the store; however, as she walked past the truck, the driver inquired as to where she was going and offered to drive the victim to the store.  Accepting the offer, the victim got into the truck and complied with the driver's instructions to lock the door and fasten her seatbelt, thereby immobilizing her.  Immediately thereafter, the Appellant pulled back a curtain and struck the victim in the throat with a baseball bat. Following a series of attacks, the victim was taken to a second location where she was left in a field of weeds, making her virtually undetectable to passers-by.  In our opinion, this testimony constitutes sufficient evidence for a rational trier of fact to find that the victim was fraudulently induced to get into the truck, and to convict the Appellant of especially aggravated kidnapping.  In any event, even if the initial confinement was consensual, it certainly became against the will of the victim when she was taken, unconscious, to a second location.  For these reasons, we affirm the conviction for especially aggravated kidnapping.

### (c) Coercion of a Witness

The Appellant argues that the evidence in this case is not sufficient to convict him of coercion of a witness.  Tennessee Code Annotated § 39-16-507(a) (2003) provides:

> a person commits an offense who, by means of coercion, influences or attempts to influence a witness or prospective witness in an official proceeding with intent to influence the witness to (1) [t]estify falsely; (2) [w]ithhold any truthful testimony, truthful information, document or thing; or (3) [e]lude legal process summoning the

---

[1]  Although the victim initially stated that she walked "up to the truck," she further clarified that she meant she had to approach the truck *en route* to the store.

witness to testify or supply evidence, or to be absent from an official proceeding to which the witness has been legally summoned.

The Appellant argues that because he was not implicated in the victim's April 2001 rape and never threatened her not to testify against him, the conviction cannot stand. However, Tennessee Code Annotated section 29-16-507(a) (2003) contains no language mandating that the person who commits this offense must be a party to the action or even have a stake in the outcome of the judicial proceedings. The proof at trial established that the victim had filed charges against Holmes for the alleged rape that occurred in April 2001 and that the victim intended to pursue the charges. The Appellant and Holmes were good friends and had planned the attack of the victim to discourage her from testifying or to influence her to drop the charges. During the attack, Holmes instructed the victim "to call Sergeant Colbert and drop the charges." Accordingly, we conclude that the proof was sufficient for a jury to find the Appellant guilty of coercion of a witness beyond a reasonable doubt.

## II. Failure to Remove a Juror

Next, the Appellant contends that the trial court erred when it failed to remove a juror who supposedly talked to another juror about the merits of the case. We disagree. The record reflects that in response to the court's admonition to the jury about discussing the case prior to the close of the proof, juror Wasmund reported to the court that he overheard juror Harty make "a general observation about how the case was going" to another juror. Wasmund also reported that the comment was related "I guess to guilt or not guilt." Wasmund stated that overhearing this statement would not affect his own thought process regarding the case, but he expressed his discomfort in returning to the jury after making the report. After dismissing Wasmund, the court stated, ". . . he seemed so uncomfortable with how things developed that I don't think it would have been appropriate to have left him on even though he did nothing wrong and he made no statements pertaining to the case." The court then questioned juror Harty, who claimed that he had not formed an opinion as to the defendant's guilt or innocence and that he did not remember commenting about the facts of the case to another juror. The court found no reason to dismiss Harty. The court concluded:

Mr. Wasmund indicated that he overheard a statement last night; it wasn't within the context of the trial itself; it wasn't in the jury room while whey were waiting to be brought back into the courtroom or anything of that sort. So it might well be that Mr. Harty made some statement that he doesn't even remember having made that Mr. Wasmund overheard, and they viewed it on two different levels. And Mr. Wasmund felt it was serious enough to report to Officer Burras, but Mr. Harty doesn't recall having made it because it was made in such a casual manner that he just might have made it and moved on to some other conversation or some other event in the evening.

Tennessee Rule of Criminal Procedure 24(f) relates that after a jury is sworn, the court should give jurors admonitions regarding their conduct during the case. Jurors must not communicate with one another or others concerning the trial or express opinions regarding the case until its completion, and they are told to report such improper action promptly. Tenn. R. Crim. P. 24(f). Juror Wasmund complied with this rule by bringing the matter to the court's attention. The Appellant argues that the

trial court erred because Harty "was obviously unable to render a fair and impartial verdict, by his comments, yet he was allowed to remain on the jury." We conclude that the trial court did not abuse its discretion in retaining this juror. We agree with the reasoning of the trial court and are unable to determine the extent of extrajudicial communication or whether it actually transpired in this case. Thus, the trial court properly retained Harty as a member of the jury.

## III. Consecutive Sentencing

The Appellant argues that the trial court erred by ordering his sentences for attempted first-degree murder and especially aggravated kidnapping be served consecutively.[2] With reference to the facts of this case, Tennessee Code Annotated section 40- 35-115(b) provides that the court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

> (2) The defendant is an offender whose record of criminal activity is extensive;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (6) The defendant is sentenced for an offense committed while on probation[.]

Tenn. Code Ann. § 40-35-115(b)(2), (4), (6) (2003).

This court's review of the manner of service of a sentence is *de novo* with a presumption that the determination made by the trial court is correct. Tenn. Code Ann. § 40-35-401(d) (2003). Likewise, the appellant bears the burden of proving the impropriety of the consecutive nature of the sentences imposed. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. Before consecutive sentences can be imposed, the trial court must first determine that one or more of the statutorily enumerated criteria of Tennessee Code Annotated section 40-35-115 exist. *Gray v. State*, 538 S.W.2d 391, 393 (Tenn.1976). If the defendant is found to be a dangerous offender, the court must additionally find that the aggregate sentence is reasonably related to the severity of the offenses and is necessary to protect the public from further criminal activity of the offender. *State v. Wilkerson*, 905 S.W.2d 933, 937 (Tenn. 1995); *see also State v. Lane*, 3 S.W.3d 456, 461 (Tenn. 1999) (holding *Wilkerson* factors were limited to sentencing of "dangerous offenders"). Notwithstanding proof of these criteria, a sentencing court retains discretion in imposing consecutive sentences. On appeal, the exercise of the trial court's discretion is afforded great weight, provided the court correctly applied the principles of consecutive sentencing. Moreover, in determining whether the trial court providently exercised its discretion, "the overriding concern" is the fairness of the resulting sentence under all the circumstances.

---

[2] The Appellant's sentencing issue is framed: "The trial judge erred by imposing top of the range, consecutive sentencing for Criminal Attempt Murder First Degree and Especially Aggravated Kidnapping." An appeal of a sentence may be brought on either of following grounds: (1) the sentence was not imposed in accordance with the Sentencing Act and/or the enhancing and mitigating factors were not properly weighed, and the sentence is excessive under the sentencing considerations set out in Tennessee Code Annotated section 40-35-103, 401(b)(1), (2) (2003). The Appellant challenges neither of the above grounds, does not contest application of the five enhancing factors found by the trial court, nor offers any argument in support of an excessive or erroneous sentence. Accordingly, we limit our review to the propriety of consecutive sentences.

Consecutive sentences are imposed upon dangerous offenders to protect society against offenders who commit aggravated crimes that pose a high risk to human life. Under *Gray*, a finding that a defendant is a "dangerous offender" is based upon the circumstances surrounding the crimes for which the defendant is being sentenced. The court stated in *Gray*, 538 S.W.2d at 393:"[a] defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *Id; see also* Tenn. Code Ann. § 40-35-115(b)(4). No prerequisite exists in Tennessee Code Annotated section 40-35-115(b)(4), *Gray v. State*, or *State v. Wilkerson* that the offense, by statutory definition alone, be a dangerous offense. In determining the inherently dangerous nature of the instant offenses, the focus is not whether the crimes were dangerous crimes, but whether there exists aggravating circumstances in the commission of the instant offenses. *See Gray*, 538 S.W.2d at 393.

At the sentencing hearing, the trial court conducted a thorough analysis before imposing consecutive sentences. The court reasoned that the Appellant had an extensive criminal record finding ". . . thirteen prior convictions - felony and misdemeanor, and four or five juvenile court/contempt of court, which I would assume are child-support issues, I would call that extensive." Our review of the presentence report reveals numerous convictions, including convictions for harassment, stalking, aggravated robbery, assault, and possession of drugs and drug paraphernalia. The court also determined that the Appellant was a dangerous offender concluding:

> anyone who participates in a beating of this sort that is so extensive, so severe, and has no regard for human life, no hesitation about committing a crime in which the risk to human life is high. It can be a reasonable inference from the facts of this case - the manner in which this lady was beaten - the fact that she was wrapped in plastic and dumped in a ditch in Frayser in a fairly remote spot that the individuals who did this, did it with the intention of killing their victim. So, certainly the risk to her life was high.

The court also found that the Appellant committed this offense while on probation as reflected in the presentence report. Finally, the court determined that the need for consecutive sentencing balanced with the severity of the offenses and the need to protect the public.

The Appellant concedes that he was on probation when the offense occurred and that he has a criminal record but denies that "he showed little or no regard for human life, or that he devoted his life to criminal activity." We disagree. The Appellant beat the victim with a baseball bat, wrapped her in plastic, and tried to snap her neck before leaving her to die on the side of the road. At no point did the Appellant hesitate or feel remorse. We cannot construe these actions to manifest anything but undeniable disregard for human life. As indicated by the word *or*, the sentencing court may use any one factor delineated in Tennessee Code Annotated section 40-35-115 as criteria for consecutive sentencing, but all factors need not be present. In this case the court found that the Appellant had an extensive criminal record. At no time did the court express that the Appellant was a career criminal. It also concluded that the Appellant acted as a dangerous offender with no regard for human life and committed the offense while on probation. Upon *de novo* review of the record, we

conclude that the imposition of consecutive sentences was appropriate, as the proof established that the aggregate sentence imposed reasonably relates to the severity of the offenses and was necessary to protect the public from further criminal acts of the Appellant. Accordingly, this issue is without merit.

## Conclusion

After review, we conclude that the proof is legally sufficient to support the Appellant's convictions on all counts. The remaining issues raised by the Appellant are without merit. Therefore, we affirm.

_____
JOHN EVERETT WILLIAMS, JUDGE