IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
August 29, 2023 Session

**STATE OF TENNESSEE v. CAMERON TOMMY BEARD**

**Appeal from the Circuit Court for Anderson County**
**No. B8CO0440      Ryan M. Spitzer, Judge**

_____

**No. E2022-00745-CCA-R3-CD**

_____

The Appellant was convicted by an Anderson County jury of reckless aggravated assault and child abuse, for which he received an effective sentence of eight years' imprisonment. On appeal, he argues that his sentence is excessive because the trial court: (1) misapplied certain enhancement factors, and the resulting sentence is inconsistent with the purposes and principles of the Sentencing Act; and (2) imposed consecutive sentences based on the dangerous offender classification without making the requisite findings. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JILL BARTEE AYERS, JJ., joined.

Matthew D. Ooten, Knoxville, Tennessee, for the Appellant, Cameron Tommy Beard.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Dave S. Clark, District Attorney General; and Anthony Craighead and Emily Faye Abbott, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

The facts giving rise to the Appellant's convictions stem from two separate times the Appellant injured his five-month-old daughter, P.R.[1]  On March 23, 2018, P.R. stayed overnight with the Appellant for the first time.  The next day, P.R.'s mother noticed bruises on both sides of P.R.'s face.  When she questioned the Appellant about the bruises, he told her that his son fell and hit P.R.  He later told her, however, that P.R. fell off the bed.  On

---

[1] It is the policy of this court to identify minor victims by their initials only.

March 27, 2018, P.R. again stayed overnight with the Appellant. The next day, P.R. became unresponsive and emergency personnel were dispatched to the Appellant's home. P.R. was taken to the hospital, where doctors discovered she was suffering from seizures and a brain bleed. The Appellant admitted to police that during the overnight stays, he slapped and shook P.R.

An Anderson County grand jury indicted the Appellant for both aggravated child abuse and child abuse for P.R.'s brain injuries, and a second count of child abuse for P.R.'s bruises. Prior to trial, the State dismissed the child abuse charge related to the brain injuries because it was a lesser included offense of the aggravated child abuse charge. At trial, the jury convicted the Appellant of reckless aggravated assault, a lesser included offense of aggravated child abuse, and child abuse.

**Sentencing Hearing**. The trial court held a sentencing hearing and sentenced the Appellant to four years' imprisonment for each conviction, to be served consecutively. Three witnesses testified for the State—the officer who prepared the presentence report, the officer who responded to the incident underlying the Appellant's pending vandalism charge, and the woman the Appellant allegedly assaulted in his pending domestic violence case. The mother of the Appellant's two other children testified for the defense, and the Appellant provided an allocution statement.

Officer Steven Collins testified that he prepared the Appellant's presentence report. The Appellant had one misdemeanor vandalism conviction for an offense that occurred after the instant offenses. He also had pending charges for domestic violence and vandalism.

Deputy Christopher Chapman testified that he worked at the Anderson County Detention Facility and responded to the incident underlying the Appellant's pending vandalism charge. The sprinkler head in the Appellant's cell had been "popped," causing the fire alarm to activate and water to release from the pipes. The Appellant was alone in the cell. Before entering the cell, officers instructed the Appellant to get on the ground. When the Appellant refused, officers sprayed him with pepper spray, handcuffed him, and placed him in a safety chair.

Ashley Greenlee testified that she was in a relationship with the Appellant in July 2019, and described the incident that led to the Appellant's pending domestic violence charge. She was driving down the road, with the Appellant riding in her passenger seat. They got into an argument, and he punched her in the face twice. She stopped the car in the middle of the road and told him to get out. He exited the car, and though she initially drove away, she went back to get him "[b]ecause [she] loved him at the time." The State introduced a picture of her bruised face.

Greenlee said the next day, she and the Appellant argued again. The Appellant put his hands around her neck and choked her for a few seconds. He then grabbed a pocket knife, held it to her neck, and told her if she left he was going to kill her. She left and called her mother. Her mother called the police, who met Greenlee "right down the road." The State introduced a picture of the injuries on Greenlee's neck. Greenlee acknowledged that a year ago, she messaged the Appellant "on the jail app" to make her then boyfriend mad. On cross-examination, she admitted to having a drug addiction problem while she was in a relationship with the Appellant. She said she smoked marijuana on "that day," though it is unclear to which day she was referring. The State closed its proof.

Nichole Ludwig testified that the Appellant was the father of her four-year-old son and two-year-old daughter. She had known the Appellant for eight years, and they lived together for two to three years. During their relationship, she never feared him. Though their relationship had ended, she talked to him every day so that he could speak with their children. Before the Appellant was arrested, she left their son alone with the Appellant several days a week while she worked. Their son was never injured nor had any problems. The Appellant had never met their two-year-old daughter because she was born after his arrest. Ludwig had no concerns with allowing the Appellant to see their children if he were released because "[he is] a great dad and [she] [knows] that he loves his kids." He had no legal obligation to take care of their children, but she "[had] no doubt" he would.

The Appellant gave an allocution statement. He apologized for "everything that [had] been going on" but maintained that "accidents happen." He also said he "[believed] that there [were] other things that had gone on." He "[loved] [his] kids more than anything" and "[hoped] to get out and be a good father[.]"

After hearing the above testimony, the trial court sentenced the Appellant as a Range I, standard offender to four years' imprisonment for each conviction, to be served consecutively. In determining the sentence length, the court first considered the evidence presented at trial. P.R.'s mother testified that P.R. suffered seizures initially. Though it was too early to determine the long-term effects of P.R.'s injuries, P.R. had an individualized education plan at school, which included receiving speech and physical therapy. A radiology expert testified that P.R.'s MRI showed significant trauma. Her injuries were not consistent with a fall from the bed, and were more similar to injuries resulting from a car accident or an eight-foot fall. A pediatric neurology expert testified that her injuries were consistent with having been shaken and were unlikely to have been sustained in everyday life. A pediatric abuse expert testified that P.R.'s bruising was consistent with being slapped. A recording of the police interview showed the Appellant admitting to slapping P.R. and shaking her "at about a six to seven on a scale of one to ten."

- 3 -

The court next considered the evidence presented at the sentencing hearing and in the presentence report. The court "[gave] no consideration and no weight to the testimony with respect to the [pending] aggravated assault charge" that occurred while the Appellant was released on bond. The court also, however, gave very little weight to the Appellant's apology. The court was troubled that even after admitting to the police that he struck and shook P.R., the Appellant said in the presentence report, "I don't believe I abused my child and will continue to say so." The court highlighted that in the Appellant's allocution statement, he never mentioned P.R. by name and did not express concern about her health or remorse for the injuries he caused her.

The court then discussed the purposes and principles of the Sentencing Act. The court noted that the Appellant did not have a lengthy history of criminal conduct. The court discussed the potential for restitution, stating that aside from paying medical bills, it was unsure "how [the Appellant] can make restitution to a victim that [he has] likely injured for the remainder of her life." The court considered the nature and characteristics of the criminal conduct involved, again highlighting the evidence presented at trial.

The court then considered enhancement and mitigating factors. The court applied enhancement factor (4), that a victim of the offense was particularly vulnerable due to age, stating that P.R. was five months old and "clearly, factor four applies as to [reckless aggravated assault] and [it is] also an element of [child abuse]." The court applied enhancement factor (6), that the victim's injuries were particularly great, because P.R. suffered a brain bleed that could have been life-threatening. The court "[gave] a small amount of consideration" to mitigating factor (5), that the Appellant made a good faith attempt to compensate the victim for the injury sustained. Though the Appellant sought medical care for P.R., his motivation was likely self-preservation. The court also applied mitigating factor (11), that the defendant committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the criminal conduct. The court did not believe that the Appellant intended to injure his daughter and described his actions as a "spontaneous[,] anger-induced[,] detrimental[,] and horrendous decision [.]"

The court then considered statistical information provided by the administrative office of the courts. It noted that from 2020 to 2021, approximately thirty-six percent of Class D felony sentences involved incarceration. For standard offenders convicted of Class D felonies, the average incarceration time was roughly two years and nine months. It also noted, however, that unlike this case, "the vast majority of D felonies are probably [nonviolent] and certainly would not involve child victims." The court noted that it was also considering the Appellant's statement, P.R.'s mother's statement, and the validated risk and needs assessment.

The court determined that four years' imprisonment for each conviction was appropriate because "any other lesser sentence would [] depreciate the seriousness of the offense" and "confinement is necessary to restrain this defendant under the sentencing principles." The court then determined that the sentences should be served consecutively because the Appellant was a dangerous offender. The court emphasized that the Appellant slapped and shook P.R., resulting in a brain bleed, and that this "does show a lack of regard for her safety and for her life[.]" The Appellant filed an unsuccessful motion for new trial. This timely appeal followed.

## ANALYSIS

**I. Length of Sentences**. The Appellant first challenges the length of his sentences. He argues that imposing the maximum within-range sentence for each conviction was excessive because the trial court misapplied certain enhancement factors and his aggregate sentence is inconsistent with the purposes and principles of the Sentencing Act. The State concedes error in the application of enhancement factor (6) to the Appellant's reckless aggravated assault conviction, but contends that the length of the sentences is still consistent with the purposes and principles of the Sentencing Act. We agree with the State.

This court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). So long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed, the sentence should be upheld. Id. at 706. Even the misapplication of an enhancement or mitigating factor, however, "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id.

In sentencing a defendant, the Sentencing Act directs the trial court to consider the following:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;

(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and

(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

Tenn. Code Ann. § 40-35-210(b).  The purposes and principles of the Sentencing Act require that the trial court consider the defendant's potential for rehabilitation or treatment. Id. § 40-35-102(3)(C), -103(5).  In addition, the sentence must be "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed."  Id. § 40-35-103(2), (4).

In this case, the trial court applied enhancement factors (4) and (6) to both of the Appellant's convictions.  See id. § 40-35-114(4), (6).  The Appellant does not contest the court's application of enhancement factor (4), that the victim was particularly vulnerable because of age, to his reckless aggravated assault conviction.  He does, however, contest the court's application of the remaining factors.

The Appellant first argues, and the State concedes, that the trial court erred in applying enhancement factor (6), that the victim's injuries were particularly great, to the Appellant's reckless aggravated assault conviction.  The trial court is prohibited from applying an enhancement factor that is an essential element of the offense.  Tenn. Code Ann. § 40-35-114.  Reckless aggravated assault, as convicted in this case, is defined as an assault that "[r]esults in serious bodily injury to another."  Id. § 39-13-102(a)(1)(B)(i). Because "proof of serious bodily injury will always constitute proof of particularly great injury," enhancement factor (6) is an element of the offense.  State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994).  Accordingly, the trial court erred in applying factor (6) to the Appellant's reckless aggravated assault conviction.

The Appellant also argues that the trial court erred in applying enhancement factor (6) to his child abuse conviction.  He argues that factor (6) was inapplicable because the conviction "involved surface bruises to the victim's face, not the more serious injuries" underlying the reckless aggravated assault conviction.  The State responds that this claim is "easily dismissed" because P.R. sustained brain injuries, suffered from seizures, and had extensive bruising.  But, as the Appellant correctly points out, the brain injuries and

seizures were caused by the conduct supporting the Appellant's reckless aggravated assault conviction—not his child abuse conviction. In the bill of particulars, the State specifically said the injuries supporting this child abuse charge were "bruises to the face of the child." Because bruises are not a "particularly great" injury, the trial court erred in applying factor (6) to the Appellant's child abuse conviction. See State v. Spratt, 31 S.W.3d 587, 607-08 (Tenn. Crim. App. 2000) (holding that the trial court misapplied factor (6) when the only injuries were cuts on the victim's head, bruises and scratches on her neck, and headaches).

The Appellant next argues that the trial court erred in applying enhancement factor (4), that the victim was particularly vulnerable because of her age, to his child abuse conviction because it is an essential element of the offense. Child abuse, as convicted in this case, occurs when a person "knowingly abuses or neglects a child" eight years of age or less "so as to adversely affect the child's health and welfare." Tenn. Code Ann. § 39-15-401(b). But "age, as an essential element of the offense, does not preclude application of the 'particularly vulnerable' enhancement factor." State v. Walton, 958 S.W.2d 724, 729 (Tenn. 1997). In determining whether to apply factor (4), the trial court should consider:

> (1) whether the victim, because of age or mental or physical attributes, was particularly unable to resist the crime, summon help, or testify at a later date; (2) whether victim's age (extremely old or extremely young) is entitled to additional weight; and (3) whether the vulnerability of the victim made the victim more of a target for the offense or, conversely, whether the offense was committed in such a manner as to render the vulnerability of the victim irrelevant.

Id. (citing State v. Poole, 945 S.W.2d 93, 96-97 (Tenn. 1997)). In this case, P.R. was five months old when the crimes occurred. Unlike an eight-year-old child, P.R. was completely unable to resist the crime, summon help, or testify against the Appellant. The record therefore supports the trial court's application of enhancement factor (4) to the Appellant's child abuse conviction.

Despite the trial court's misapplication of enhancement factor (6), the court did not abuse its discretion in sentencing the Appellant to the maximum within-range sentences because it properly applied the purposes and principles of the Sentencing Act. The court addressed each of the eight statutory sentencing considerations. See Tenn. Code Ann. § 40-35-210(b). The court properly applied enhancement factor (4) to both of the Appellant's convictions. The court expressed concerns about the Appellant's potential for rehabilitation because the Appellant, despite admitting to police that he struck and shook his daughter, continued to deny that he abused her. See id. § 40-35-103(5). The court considered the administrative office of the courts' sentencing statistics, but determined that

- 7 -

this case warranted the maximum within-range sentence. Because the court imposed within-range sentences after a proper application of the purposes and principles of the Sentencing Act, we cannot conclude that the court abused its discretion.

**II. Consecutive Sentences**. The Appellant next challenges the trial court's imposition of consecutive sentences. He argues that the trial court ordered consecutive sentences based solely on the dangerous offender classification without making the requisite findings. The State concedes that the trial court failed to make the requisite findings but insists that consecutive sentencing is appropriate. We agree that the trial court failed to make the requisite findings but find consecutive sentencing appropriate after a de novo review.

"[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013). When the trial court fails to provide adequate reasons on the record for imposing consecutive sentences, however, this court "should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority." Id. at 863-64. Instead, this court "has two options: (1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences." Id. at 864.

When a defendant is convicted of more than one offense, the trial court may order the sentences to run consecutively if the court finds, by a preponderance of the evidence, that the defendant fits into at least one of the enumerated categories. Tenn. Code Ann. § 40-35-115(b). In this case, the trial court imposed consecutive sentencing based solely on its finding that the Appellant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. See Tenn. Code Ann. § 40-35-115(b)(4). But "because the dangerous offender classification is the most subjective to apply," the trial court must make two additional findings before ordering consecutive sentences based on this classification. Pollard, 432 S.W.3d at 863 (citing State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999)). The trial court must find that the aggregate sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts." Id. (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995)).

In this case, the trial court failed to make the additional required findings before imposing consecutive sentences based on the dangerous offender classification. Though the court found that the Appellant's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, it failed to address the two additional Wilkerson factors. This court, therefore, cannot

- 8 -

presume that the consecutive sentences are reasonable, nor defer to the court's exercise of discretion. However, there is sufficient evidence in the record for this court to conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences.

We conclude that an effective eight-year sentence is reasonably related to the severity of the offenses committed by the Appellant. The Appellant initially stated that P.R. fell off the bed but later said she fell off the couch. P.R. was unresponsive and was taken by ambulance to the hospital where she remained for a week. The Appellant later admitted to police that he slapped and shook P.R., who then suffered from seizures and a brain bleed. The long-term effects of P.R.'s injuries were underdetermined at the time of sentencing. She was five months old at the time of the injury and at trial and sentencing was in pre-school. She had learning disabilities and was required to receive speech, physical, and occupational therapy pursuant to an individualized education plan at school. A radiology expert testified that P.R.'s MRI showed significant trauma inconsistent with the Appellant's story of how P.R. was injured. The expert stated that P.R.," [H]ad suffered a hemorrhage, which is usually from trauma. Then [P.R.] had the injury either to the brain tissue or related to the trauma." The expert likened the trauma P.R. suffered to trauma from "shear forces on the range of a motor vehicle accident or a fall from a height . . . at least eight feet."

Regarding the necessity to protect the public from Appellant's further criminal acts, the trial court heard testimony from Ashley Greenlee, who was in a relationship with the Appellant. While the Appellant was on bond pending trial in this case, Greenlee testified that while she was driving, the Appellant punched her in the face twice during an argument. The following day, the Appellant put his hands around her neck and choked her for a few seconds, held a knife to her neck, and threatened to kill her. Photographs of the bruising and injuries to Greenlee's neck were exhibited to her testimony. The Appellant's bond was revoked as a result of the charges brought from his actions against Greenlee. The record also shows that after Appellant's bond was revoked, he was convicted of vandalism for a disturbance he created while incarcerated in the county jail. In addition to damaging jail property, the Appellant refused to follow instructions and had to be subdued with pepper spray and handcuffs. The record supports the need to protect the public from further criminal acts of the Appellant.

Following a de novo review, we conclude that the trial court's order of consecutive sentencing was reasonable and was not an abuse of discretion.

## CONCLUSION

Based on the above reasoning and authority, we affirm the judgments of the trial court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE